1997 OK 134

STATE of Oklahoma, ex rel, DEPART-
MENT OF HUMAN SERVICES,
Petitioner,

v.

The Honorable Jerry COLCLAZIER, Dis-
trict Judge, McClain County, State of
Oklahoma, Respondent.

No. 89356.

Supreme Court of Oklahoma.

Oct. 28, 1997.

As Corrected Nov. 10, 1997.

Rehearing Denied Jan. 21, 1998.

Diane File, Assistant General Counsel, Oklahoma City, for petitioner.

Carl Franklin, Norman, for the mother.

Charles N. Gray, Purcell, for the deprived child.

Lori Ann Puckett, Assistant District Attorney, Purcell, for respondent.

ALMA WILSON, Justice.

¶ 1 We grant petitioner's application to assume original jurisdiction to address two questions: 1) Whether the district court may direct changes in the placement, care and treatment of a child adjudicated deprived and placed in the custody of the Department of Human Services under the Oklahoma Children's Code;[1] and, 2) Whether the district court may direct the Department of Human Services to provide foster care payments for a child adjudicated deprived who is not in the custody of the Department. We hold that, pursuant to the Oklahoma Children's Code, the district court in McClain County had the power to order the Department of Human Services to modify its placement of the subject deprived child, according to the best interests of the child standard. We further hold that upon removal of custody of the subject child from the Department of Human Services the district court in McClain County should have determined, after a proper hearing, whether the Department has the responsibility to provide foster care payments for the child.

¶ 2 In this original proceeding, petitioner, the Department of Human Services (DHS), seeks relief from two separate orders entered by the Honorable Jerry Colclazier, District Judge, District Court in McClain County, Oklahoma, in a juvenile proceeding styled In the Matter of J.U., An Alleged Deprived Child, No. JFJ–95–63. The orders direct DHS to move the deprived child from the care of foster parents who reside some 100 miles away from the child's home and place the child in another foster home nearer in proximity to her home and to pay foster care expenses.

¶ 3 The juvenile proceedings below began when J.U. was removed from her mother's custody by DHS in August, 1995, because her mother was hospitalized for mental health reasons. J.U., an alleged deprived child, was placed in a foster home where she remained until December, 1996, when DHS placed J.U. and her new-born brother in a foster-adoptive home at a location more than 100 miles away.[2] In March, 1997, at the conclusion of a three-day non-jury trial, the district court denied the state's request to terminate the parental rights of J.U.'s mother and ordered immediate visitation with the mother and a program of therapy to assist in the goal of reunification.[3]

¶ 4 At the disposition hearing had on April 16, 1997, attorneys for the mother, the child, and the state, jointly, requested that five year old J.U. be removed from the foster-adoptive home as soon as the move could be effected with the least amount of anxiety to J.U. The court heard evidence tending to show that the foster-adoptive parents' behavior was not supportive of the ordered visitation and reunification plan and that the foster-adoptive parents had refused to transport J.U. for psychiatric and therapy services ordered by the court, and expert testimony that a change in placement is warranted where the foster home environment is contrary to reunification efforts, even though

---

1. The Oklahoma Children's Code is codified in Chapter 70 of Title 10 of the Oklahoma Statutes. 1995 Okla.Sess.Laws, ch. 352, last amended by 1997 Okla.Sess.Laws, ch. 386 and ch. 389.

2. Apparently, court-ordered custody had always been with DHS until after initiation of this pro-

ceeding. In December, 1996, J.U.'s mother gave birth to a male child who is the subject of a deprived child proceeding in the District Court in Cleveland County, Oklahoma.

3. The order refusing to terminate parental rights is not before this Court.

change in placement increases the risk of attachment disorders. The court determined that removal from the remote foster-adoptive home to a foster home located in McClain County or Cleveland County would be in the best interest of J.U. The court ordered DHS to change the foster home placement and approved a treatment plan designed to meet the goal of reunification of J.U. and her mother as required by statute.

¶ 5 On April 22, 1997, the district court granted a stay of its April 16th order. Upon a subsequent hearing, the court dissolved the stay and ordered that DHS place J.U. in a foster home within a forty-mile radius of the courthouse by Friday, May 2, 1997. On May 2, 1997, DHS filed this original proceeding. This Court entered an emergency stay order on May 12, 1997, suspending the effectiveness of the ordered change in foster home placement. Thereafter, the district court revoked the custody of DHS [4] and specified the placement of J.U. [5] DHS canceled J.U.'s medical card for medical, psychological, and social services under the Medicaid system and terminated foster-care payments and clothing vouchers for J.U. On May 29, 1997, the district court ordered DHS to provide foster care payments and clothing vouchers for J.U. By supplemental filing herein, DHS also seeks relief from the May 29th order to make provision for foster care expenses.

¶ 6 DHS contends the April 16th order requiring change in placement and the May 29th order requiring foster care payments are excessive and unwarranted exercises of judicial power and asks this Court to issue a writ of prohibition. [6] DHS argues that the April 16th order invades the exclusive placement authority vested in DHS pursuant to 10 O.S.Supp.1996, § 7003–7.1(B)(1). DHS also asserts that the May 29th order may be contrary to 42 U.S.C. § 672.

## I. The Order of April 16, 1997

¶ 7 Title 10 O.S.Supp.1996, § 7003–7.1(B)(1), as amended by 1997 Okla.Sess. Laws, ch. 386, § 7,[7] provides:

> B. 1. If the child is placed in the custody of the Department of Human Services, **whether in emergency, temporary or permanent custody, the Department shall determine the appropriate placement of the child.** However, under no circumstances may the Department of Human Services return a child to a parent that contributed to the child being deprived due to abuse or neglect, without prior approval of the court. Any change in the placement of a child adjudicated to be deprived shall be in accord with the provisions of subsection B of Section 7003–5.4a of this title. (Emphasis added.)

▪ ¶ 8 DHS relies on the emphasized language for the proposition that it has placement authority at every stage of the juvenile

---

**4.** According to the dissent, the issue raised by DHS in this original proceeding was rendered moot by the mid-stream change in custody. Because it is capable of repetition, the issue is excepted from the mootness doctrine. *Gaines v. Maynard*, 808 P.2d 672 (Okla.1991); *B.J.B. v. District Court of Oklahoma County*, 611 P.2d 249 (Okla.1980); and *In re Mental Health of D.B.W.*, 616 P.2d 1149 (Okla.1980). The dissent, recognizing the repetition of the issue, comments that "the court's authority to control the Department's care and placement decision about children after they are placed in the Department's custody has been a persistent source of conflict within the juvenile system for at least twenty years."

**5.** Having revoked DHS' court-ordered custody of J.U., the district court specified the home of local foster parents, who are DHS-approved foster parents, and directed DHS to deliver J.U. to their home. DHS seeks no relief from this order.

Today we hold that DHS' specific placement of J.U. was subject to approval or disapproval of the district court. For purposes of clarification, our holding does not recognize judicial power to order a specific placement of a child whose court-ordered custody is with DHS, but to approve DHS' determination of an appropriate specific placement or to disapprove it, if the specific placement does not conform to statutory requirements and the best interests of the child.

**6.** The extraordinary writ of prohibition is an appropriate remedy to prevent excessive exercise of judicial power. *State v. Evans*, 319 P.2d 1112 (Okla.1957).

**7.** The 1997 amendment corrected reference to other sections in the Children's Code; § 7003–7.1(B)(1) was corrected to reference § 7003–5.4a(B). The amendments became effective upon approval on June 10, 1997.

proceedings [8] and therefore, its authority is exclusive and the district court has no power to order DHS to change its placement of a child. The language clearly imposes upon DHS a duty [9] to determine the appropriate placement of a child placed in its custody, which includes the necessary authority to fulfill the mandatory duty.[10] It does not, however, exclude DHS' placement of an adjudicated deprived child from judicial review established in other sections of the Children's Code. Rather, the two sentences following the emphasized language clearly subjects DHS' determination to return a child to its home or to change placement to approval of the district court. Further, the following subparagraph contemplates that the care and treatment of children provided by DHS will be subject to the power of the district court. Subparagraph (B)(2) provides that the Department is entitled to notice of "all court proceedings pertaining to the care and custody of the child including . . . disposition and review of disposition. . . ." Reading the language in the context of the entire section,[11] we do not ascertain an intent that the deter-

mination of appropriate placement by DHS is to be excluded from the judicial procedures established for the protection of the child.

¶ 9 Statutory interpretation is not necessary where legislative intent is clear from a literal reading of the statute.[12] However when the purpose and intent is not obvious from the plain words of the statute, legislative intent will be ascertained from the whole act.[13] In this matter, DHS argues that the intent of § 7003–7.1(B)(1) is to exclude its determination of the appropriateness of the foster-adoptive home placement of J.U. from the reach of the juvenile court. This position is inconsistent with a broad reading of the whole of the Oklahoma Children's Code.[14] Perusal of the Oklahoma Children's Code reveals an intent that the district court has the disposition and review authority to approve, disapprove, or modify DHS' placement, care, and treatment of an adjudicated deprived child placed in its custody; and, the judicial review authority is continuing until the court places permanent custody of the child with DHS or until the child is no longer a ward of the court.

8. In 10 O.S.Supp.1996, § 7001–1.3 custody is defined with reference to the stage of the proceeding: 1) emergency custody means court-ordered custody of a child prior to adjudication; 2) temporary custody means court-ordered custody of an adjudicated deprived child; and, 3) permanent custody means court-ordered custody of an adjudicated deprived child whose parental rights have been terminated. In the instant matter, DHS had temporary custody.

9. Use of "shall" signifies a legislative command. *U.S. Through Farmers Home Administration v. Hobbs*, 921 P.2d 338 (Okla.1996).

10. *Patterson v. Stanolind Oil & Gas Co.*, 182 Okla. 155, 77 P.2d 83, 90, (1938).

11. Words or phrases are to be understood in the context of all of the statute. *Matter of Estate of Little Bear*, 909 P.2d 42 (Okla.1995). In its entirety, § 7003–7.1 specifies duties and rights of persons, institutions, or agencies to which the district court transfers custody of a deprived child, such as the duty to provide basic necessities, food, clothing, medical care, education, and guidance and discipline, for the child and the right to be immune from damages liability and to notice of court proceedings.

12. Statutory construction is not necessary if the legislative intent is clearly expressed, *Matter of Estate of Flowers*, 848 P.2d 1146 (Okla.1993);

and, if legislative intent is clearly expressed, the ordinary meaning of the statutory language will control, *Oklahoma Association for Equitable Taxation v. Oklahoma City*, 901 P.2d 800 (Okla.1995) cert. denied —— U.S. ——, 116 S.Ct. 674, 133 L.Ed.2d 523.

13. The cardinal rule of statutory construction is to ascertain legislative intent and give effect to every provision, *Kratz v. Kratz*, 905 P.2d 753 (Okla.1995), and, intent is ascertained from whole act, *City of Bethany v. Public Employees Relations Board*, 904 P.2d 604 (Okla.1995).

14. In 10 O.S.Supp.1996, § 7001–1.2 the Legislature expressed its intent that the provisions of the Children's Code should be liberally construed to carry out its purposes, inter alia: to provide judicial procedures to protect the welfare of the child; to provide permanency, which is in the best interests of the child; and to assure placement consistent with the treatment needs of the child.

Placement some 100 miles from J.U.'s home and the foster mother's attempts to thwart psychiatric treatment for J.U. and visitation with her mother have the potential to delay any permanency, whether through reunification or out-of-home placement and/or adoption. The welfare of J.U. is protected where judicial review prevents delay in providing permanent placement for her.

¶10 The district court's continuing authority over children adjudicated deprived is implicit in the scheme of the Children's Code: Custody orders are entered and periodically reviewed by the court guided by the "best interest of the child" standard;[15] DHS develops an individual treatment and service plan for each deprived child placed in its custody;[16] The plan must comply with the requirements of other court orders and it is subject to modification;[17] The plan must provide for placement, if outside the home, that is as close as possible in proximity to the child's home;[18] The plan must delineate services designed to improve the conditions in the home or facilitate permanent placement, focusing on the most efficient path to quick reunification or permanent placement;[19] Upon district court approval, DHS causes the individual treatment and service plan for each deprived child to be implemented;[20] DHS reports periodically to the district court and makes recommendations relating to the circumstances and conditions of those wards of the court placed in its custody;[21] Foster parents have a right to submit reports to the court;[22] DHS may transfer any child in its custody from any authorized placement to another authorized placement that is consistent with the treatment plan and subject to notice to the court;[23] DHS must give notice to foster parents prior to movement of a child from one location to another;[24] DHS must notify the district court, the district attorney, and attorney and court-appointed special advocate for the child whenever a child in DHS custody is moved from one location to another;[25] The district court must review every disposition order regarding a deprived child at least once every six months, at which time the court may direct additional services necessary to protect the child and order modification to the existing service plan as the court determines to be in the best interest of the deprived child;[26] Review hearings may be set at any time upon motion of any party;[27] Any order made pursuant to the Oklahoma Children's Code may be modified by the court at any time;[28] And, if the district court terminates parental rights and places permanent custody with DHS, "it shall vest the Department with authority to place the child and, upon notice to the court that an adoption petition has been filed concerning the child, invest the Department with authority to consent to the adoption of the child, and the jurisdiction of the committing court shall terminate upon final decree of adoption...."[29]

15. 10 O.S.Supp.1996, §§ 7003–5.5 and 7003–5.6, as amended by 1997 Okla.Sess.Laws, ch. 389, §§ 5 and 6.

16. 10 O.S.Supp.1996, §§ 7003–5.3, as amended by 1997 Okla.Sess.Laws, ch. 389, § 2, requires that an individual treatment and service plan must be filed with the court within 30 days after the adjudication; § 7004–1.1(A)(2)(b), as amended by 1997 Okla.Sess.Laws, ch. 386, § 8, provides that DHS "shall develop and, upon approval by the court, implement an individual treatment and service plan for each deprived child"; and § 7001–1.3(40) provides in the definition of a treatment and service plan that the plan must describe the "type of home or facility in which a child is to be placed" and discuss the "appropriateness of the placement."

17. § 7003–5.3(C)(3) and (4).

18. § 7003–5.3 requires that the plan must include "the reasons for such placement and a statement as to the availability or inappropriateness of local placement, or other good cause, for any placement more than forty (40) miles from the home of the child ..." and 10 O.S.Supp. 1996, § 7004–1.1, as amended by 1997 Okla. Sess.Laws, ch. 386, § 8, requires that the plan include a discussion of the appropriateness of the placement which is intended to be "in as close proximity as possible to the child's home...."

19. § 7003–5.3(I).

20. § 7004–1.1(A)(2)(b).

21. 10 O.S.Supp.1996, § 7003–5.6a.

22. § 7003–5.6(C) and 10 O.S.Supp.1996, § 7208(B), as amended by 1997 Okla.Sess.Laws, ch. 389, § 15.

23. § 7004–1.1(A)(3).

24. §§ 7003–5.6(C) and § 7208(B).

25. 10 O.S.Supp.1996, § 7003–5.4a, as amended by 1997 Okla.Sess.Laws, ch. 389, § 4.

26. § 7003–5.6.

27. § 7003–5.6(B).

28. 10 O.S.Supp.1996, § 7003–6.1.

29. § 7003–5.5(E).

¶ 11 DHS' reading of § 7003–7.1(B)(1) as vesting it with exclusive authority over placement of children in its custody diminishes the purpose and utility of numerous parts of the Oklahoma Children's Code that assure to all interested persons the availability of the courts for the protection of the child. Further, a forced meaning of exclusive placement authority assigned to the language of § 7003–7.1(B)(1) "whether emergency, temporary or permanent custody, the Department shall determine the appropriate placement" would render superfluous the plain language of § 7003–5.5(E) that the court shall vest DHS with "placement authority" when the court places "permanent custody" with DHS.[30]

¶ 12 DHS' duty and authority to determine placement are expressly confined by the guidelines in §§ 7003–5.3 and 7004–1.1, for determination of individual treatment and service plans, and subjected to approval, disapproval, or modification by order of the district court in §§ 7003–5.5 and 7003–5.6 disposition and review proceedings. Accordingly, we conclude that DHS has the duty to determine the appropriate placement of a deprived child in its custody, in the first instance, which the district court will either approve or disapprove, according to the best interests of the child standard until the district court has terminated parental rights and placed permanent custody with DHS or until the child is no longer a ward of the court.

¶ 13 The district court had the statutory duty to order a program that would allow J.U.'s mother an opportunity for reunification and the authority to protect the order from non-compliance. The order of April 16, 1997, directing DHS to move J.U. from the remote foster-adoptive home to a foster home nearer in proximity to her home was not an excessive exercise of judicial power. DHS' request for writ of prohibition as to the April 16th order is denied.

## II. The Order of May 29, 1997

¶ 14 DHS makes a tenuous argument that the May 29th order, directing DHS to pay foster care expenses even though DHS' custody has been revoked, might jeopardize federal matching funds, citing 42 U.S.C. § 672(a)(2). DHS does not assert that foster care payment eligibility is dependent upon custody of J.U. being with DHS. In this regard, we note that the Oklahoma Foster Care and Out-of-Home Placement [31] indicates that foster care payments are available whether custody of the child is placed with DHS or some other child-placing agency. Section 7206(A)(5) provides that DHS or any child-placing agency must inform the foster parents about "the amount of payments to be made for foster care services, including but not limited to a description of the process involved in receiving payments, including projected time frames, and information related to reimbursements for eligible costs and expenses."

¶ 15 In this matter, the district court removed custody of J.U. from DHS and placed her in a foster home approved by DHS. Without determining that DHS has the responsibility to provide foster care payments under the circumstances, the district court summarily ordered DHS to make the payments. Foster care payments may be available for the care of J.U. provided by the authorized foster home in which the court placed the child. However, the district court must determine that DHS has payment responsibility before it may order DHS to make foster care payments. The order was in error. Accordingly, we issue a writ of prohibition.

¶ 16 The Honorable Jerry Colclazier, District Judge, McClain County, Oklahoma, is hereby prohibited from enforcing the order directing DHS to provide foster care payments and clothing vouchers entered May 29, 1997, in the juvenile proceeding styled In the Matter of J.U., An Alleged Deprived Child, No. JFJ–95–63.

---

**30.** A statute will not be construed to have a useless results. *Cox v. Dawson*, 911 P.2d 272 (Okla.1996).

**31.** 1996 Okla.Sess.Laws, ch. 353, last amended by 1997 Okla.Sess.Laws, ch. 293 and ch. 389, is codified in Chapter 72 of Title 10 of the Oklahoma Statutes.

APPLICATION TO ASSUME ORIGINAL JURISDICTION GRANTED; PETITION FOR WRIT OF PROHIBITION GRANTED IN PART AND DENIED IN PART.

SUMMERS, V.C.J., and HODGES, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

KAUGER, C.J., concurs in part and dissents in part.

SIMMS, J., dissents in part.

LAVENDER and OPALA, JJ., dissent.

KAUGER, Chief Justice, concurring in part and dissenting in part:

Two issues are presented by this original action: 1) whether a placement decision of the Department of Human Services (DHS) made pursuant to 10 O.S.Supp.1996 § 7003–7.1(B)(1)[1] is subject to judicial review; 2) whether, once a child is removed from DHS custody, the agency remains liable for the child's medical and living expenses. Although I agree with the majority that DHS must follow federal requirements in continuing to provide support to the minor child,[2] under the facts presented, I would find that the decision by DHS on placement is not subject to judicial review.

FACTS

In August of 1995, DHS placed J.U., a deprived child in a foster home. In December of the following year, DHS placed J.U. and his newborn brother in a adoptive-foster home some one-hundred miles from the mother's location. In a dispositional hearing held on April 16, 1997, the district court ordered that J.U. be removed from the adoptive-foster home to a foster home located either in McClain or Cleveland County. After DHS filed an original proceeding questioning the court's authority to review it's placement decision, the trial court removed J.U. from DHS custody and placed the child with custodians it designated. Once DHS custody was revoked, the agency: canceled J.U.'s medical card, terminated payments for foster care; and refused to issue clothing vouchers. On May 29, 1997, the district court ordered DHS to provide foster care payments and clothing vouchers for the child.

UNDER THE FACTS PRESENTED, THE PLACEMENT DECISION MADE BY THE DEPARTMENT OF HUMAN SERVICES IS NOT SUBJECT TO JUDICIAL REVIEW UNDER 70 O.S.Supp.1996 § 7003–7.1(B)(1).

It is presumed that the Legislature has expressed its intent in a statute and that it intended what it so expressed.[3] The determination of legislative intent controls judicial statutory interpretation;[4] however, it is unnecessary to apply rules of construction to discern legislative intent if the will is clearly expressed.[5]

1. Title 10 O.S.Supp.1996 § 7003–7.1(B)(1) provides:

"If the child is placed in the custody of the Department of Human Services, whether in emergency, temporary or permanent custody, the Department shall determine the appropriate placement of the child. However, under no circumstances may the Department of Human Services return a child to a parent that contributed to the child being deprived due to abuse or neglect, without prior approval of the court. Any change in the placement of a child adjudicated to be deprived shall be in accord with the provisions of subsection F of Section 7003–5.6 of this title."

2. In his dissent, Justice Simms' relies on two unpublished orders of this Court for the proposition that the trial court was without authority to require DHS to provide the minor child with a medical card, foster-care expenses, and a clothing voucher. I dissented to the orders in No. 74,516, State of Oklahoma, ex rel., Dept. of Human Serv. v. Wilson and in No. 79.497, State of Oklahoma ex rel. Dept. of Human Serv. v. Hall. Unpublished orders and opinions have no precedential value. Rule 1.200(5), 12 O.S.Supp.1997, Ch. 15, App. 2.

3. Fuller v. Odom, 1987 OK 64, 741 P.2d 449, 453; Darnell v. Chrysler Corp., 1984 OK 57, 687 P.2d 132, 134; Independent School Dist. No. 89 v. Oklahoma Fed'n of Teachers, 1980 OK 89, 612 P.2d 719, 723.

4. Copeland v. Stone, 1992 OK 154, 842 P.2d 754, 756; Fuller v. Odom, see note 3, supra; Matter of Phillips Petroleum Co., 1982 OK 112, 652 P.2d 283, 285.

5. Copeland v. Stone, see note 4, supra; Fuller v. Odom, see note 3, supra.

The statutory language leaves no doubt that the Legislature intended that unless DHS determines that a child should be returned to a parent who contributed to the child's deprived status because of abuse or neglect, its placement decision is not subject to court approval. Section 7003–7.1(B)(1) provides in clear and mandatory language that, when a child is placed in its custody, "the Department shall determine the appropriate placement of the child." The use of "shall" by the Legislature is normally considered as a legislative mandate equivalent to the term "must", requiring interpretation as a command.[6] Here, DHS did not order J.U. returned to his mother and the exception requiring court approval in § 7003–7.1(B)(1) is inapplicable. Therefore, under the facts presented, the placement decision made by DHS is not subject to judicial review under 70 O.S.Supp.1996 § 7003–7.1(B)(1).[7]

SIMMS, Justice, dissenting in part:

Today the Court is reaching out to address issues regarding the power of a district judge to intervene in care and placement decisions made by the Department which are not before us. J.U. Is no longer in the Department's custody. Any questions about the juvenile court's control over her foster home placement by the Department were rendered abstract and moot when the respondent judge revoked the Department's custody while this matter was pending here. Of even greater importance than the fact that the Court is proceeding with this action and issuing this decision which is mere dicta, however, is the fact that the answers it reaches are wrong.

There is no support for the Court's conclusion that the newly revamped statutory scheme of the Children's Code, Title 10 Oklahoma Statutes, gives juvenile court judges the power to approve or disapprove the Department's placement choices for deprived children placed in the agency's custody. To the contrary, the statutes are a strong and direct legislative statement of the Department's exclusive discretion to determine the appropriate placement for children in its custody. As the Court recognizes, 10 O.S.Supp 1996, § 7003.7.1(B) provides:

"If the child is placed in the custody of the Department of Human Services, whether in emergency, temporary or permanent custody, the Department shall determine the appropriate placement of the child."

In support of its holding, the Court relies on the next two sentences of this section which read:

"However, under no circumstances may the Department of Human Services return a child to a parent that contributed to the child being deprived due to abuse or neglect, without prior approval of the court. Any change in the placement of a child adjudicated to be deprived shall be in accord with the provisions of subsection F of Section 7003–5.6 of this title."

The Court's reliance is misplaced, however, as those provisions establish only carefully limited exceptions to the otherwise unqualified authority of the Department to determine the care and treatment decisions of children in its custody. The provisions of subsection F of § 7003–5.6, referred to above, are now set forth in 10 O.S.Supp.1996 § 7003–5.4a. and those specific limitations are not relevant to the facts of this matter as they concern the Department's intended change of a child's placement only under circumstances where: 1.) The child would be returned to an abusive or neglectful parent; or 2.) The child has already been moved once since the last court hearing.

In these particular situations, the legislature has expressed its intent that the court should act as a check on the Department's discretion to move the child out of an existing placement and into another. This statutory restriction is explicitly designed to promote

6. *State ex rel. Macy v. Freeman,* 1991 OK 59, 814 P.2d 147, 153; *Forest Oil Corp. v. Corporation Comm'n,* 1990 OK 58, 807 P.2d 774, 787.

7. This finding comports with *State of Oklahoma, ex rel., Dept. of Inst., Social & Rehabilitative Serv. v. LeVally,* 1977 OK 54, 562 P.2d 519, in which we held that where a juvenile judge placed a child in need of supervision in the custody of DHS, the judge did not have the authority to then order DHS to transport the minor to a specific facility, detain him there, and then return him on a date certain.

the stability of a child's placement and prevent an unwise or arbitrary move of the child by the Department. It does not, however, lend itself to the Court's result here giving the juvenile judge general authority to disrupt a child's existing foster placement determined by the Department.

Neither do the terms of § 7003–7.1(B)(2) support the majority's position that the juvenile court may control the Department's placement decisions. That section simply provides that the person, institution, agency or Department having custody of a child shall receive notice of court proceedings involving the child and be allowed to intervene as a party to court proceedings and proceedings pursuant to the Inpatient Mental Health Treatment of Children Act.

Once a child is placed with the Department, the Department is responsible for the child's care and all his or her needs, including placement. Title 10 O.S.Supp.1995, Section 7004–1.1(A)(2). provides that the Department has the power and duty to "review and assess" each deprived child placed in its custody and determine which of several possible placement choices, including foster care, seems most appropriate to meet the needs of the child.

If the Department concludes that foster care is the best residential placement decision for a child in its custody, 10 O.S.Supp. 1995, § 7208(C) gives the agency exclusive discretion to determine the particular foster home in which the child should be placed:

> "When a child, under the jurisdiction of a court pursuant to the Oklahoma Children's Code, is placed in the custody of the Department * * *[it] shall have discretion to determine an appropriate foster placement for the child."

The statute further provides that other than for certain excepted circumstances which are not relevant here, the Department has the sole discretion to remove a child from his or her foster placement whenever the Department "determines that removal is in the best interests of the deprived child."

The Court attempts to obfuscate the clear meaning of relevant statutes with scattered references to provisions of the act as a whole

which have no application to this question. The statutory language at issue is unambiguous and its meaning is clear—the Department has the exclusive discretion to determine placement for children in its custody. The plain meaning of these provisions leaves no room for the Court's construction to the opposite result. *Cave Springs Public School District v. Blair*, 613 P.2d 1046 (Okla.1980).

This is not an issue of first impression. The battle of wills between the Department and the juvenile courts over the courts' authority to control the Department's care and placement decisions about children after they are placed in the Department's custody, has been a persistent source of conflict within the juvenile system for at least the last twenty years and it has been before the appellate courts on several occasions. It is important to note that those cases were decided contrary to the position urged by the trial judge here under earlier versions of the Children's Code which did not have definite and certain legislative statements of the Department's exclusive placement authority, such as those found in the current versions. In each instance, the Courts held that once a juvenile judge placed custody with the Department he had no authority under the statutes to direct the Department to select a particular placement or institute a certain treatment for the child.

In *State of Oklahoma, ex rel., Department of Institutions, Social and Rehabilitative Services v. LeVally*, 562 P.2d 519 (Okl.1977), this Court held that where a juvenile judge placed a child in need of supervision in the custody of the Department, the judge did not have the power to then order the Department to transport the minor to a specific facility and detain him there, conduct certain physical and psychiatric examinations and return him to the court by a date certain. The trial court was therefore prohibited from attempting to enforce his order as it exceeded power granted under the statutes then in force, 10 O.S.1971, §§ 1135, 1143.

Of particular relevance to the instant case is *Carder v. Court of Criminal Appeals*, 595 P.2d 416, 422 (Okla.1979), where this Court recognized that the legislature intended the Department to have significant authority

over children in its custody as it had granted the agency autonomy in its care and treatment of them. The Court stated:

> "It is true that the Legislature has granted the Department a considerable degree of institutional administrative autonomy in its care and treatment of the children placed in its custody by the several juvenile courts. (See §§ 1135, 1138, 1139, 1404). This autonomy is an obvious legislative recognition of the vast resources and qualified personnel the Department has available, as well as of the Department's need for "in-house" decision making power brought about by the sheer numbers of children placed in its custody. In terms of this case, the Department would not, under the cited statutes, have been bound by a suggestion from Judge Maley that Howard should be placed in one particular Departmental Institution or that he should receive a certain type of treatment for a certain length of time. [Citations omitted]."

In this regard, the Court of Criminal Appeals has also held that where a juvenile is committed to the Department as a delinquent child, the statutes at issue did not give authority to the juvenile court to control the Department's decisions regarding placement and treatment. See *Matter of D.W.S.*, Okl. Cr. 563 P.2d 663 (1977); *State of Oklahoma, ex rel., Department of Institutions, Social and Rehabilitative Services v. Jennings*, Okl. Cr. 561 P.2d 99 (1977). See generally, *Callahan, Juvenile Law: The extent of Judicial Intervention in Agency Care and Treatment in Oklahoma*, 32 Okl.L.Rev. 853 (1979).

Additionally, the majority is unduly concerned about the fact that J.U. was placed more that 40 miles from home. That placement did not offend any statutory requirement or directive; individual service and treatment plans are required by §§ 7003–5.3 only to state that a closer placement is unavailable or inappropriate. Statutory guidelines provide that in assessing a foster care placement, the Department should consider the child's best interest as well as any expression of the child's preference. 10 O.S.Supp 1996, § 7207.A.

Noticeably absent from these guidelines is any legislative mandate that the agency should solicit, or heed, placement suggestions from the juvenile judge. In my opinion, a statutory provision which is significant to this case involving J.U. and her infant brother is set forth in § 7202(10), expressing the legislative intent that in foster care placements when two or more children are siblings, "every reasonable effort should be made [by the Department] to place them in the same home." The Department had placed J.U. and her brother in the same home, but the juvenile court—in an order upheld now by this court—has separated them.

In giving the juvenile court this authority to disapprove the Department's placement decision and approving of its exercise in this manner, the Court today has rendered an advisory opinion totally at odds with the legislative intent of the Children's Code and has created uncertainty in the juvenile system which will cause confusion and hardship.

The respondent judge had the power to revoke the Department's status as J.U.'s custodian and place J.U. with a different custodian by order of the court. Once he did so, however, he had no authority to order the Department to pay foster care reimbursements to the court's designated custodian or to issue clothing vouchers for J.U. Eligibility requirements for Department services and assistance are not placed within the discretion of the district courts of this state.

This order exceeds the power of the court and, as the majority reluctantly concludes, a writ of prohibition should be issued to the trial court to prevent its enforcement. This same issue was addressed by this Court in February, 1990, in *State, ex rel., Dept. Of Human Services v. Major Wilson*, case No. 74,516, and again in September, 1992, in *State, ex rel. Dept. Of Human Services v. Hall*, case no. 74,497, where this Court, in unpublished orders, assumed original jurisdiction and issued writs of prohibition against the trial courts which had ordered the Department to pay foster and medical care for children after the judges had removed them from the Department's custody. The same result is also compelled here to prevent the

respondent's abuse of judicial power and authority not granted by law.

I am authorized to state that Justice LAVENDER and Justice OPALA join with me in the views expressed herein.