62 P.3d 789 (2002)
2003 OK CIV APP 5
In the Matter of E.C.B., a minor child.
Gordon Eugene Miller and Delores Louise Miller, Petitioners/Appellants,
v.
State of Oklahoma, ex rel. Department of Human Services, Respondent/Appellee.
No. 97,315.
Court of Civil Appeals of Oklahoma, Division No. 1.
October 4, 2002.
Certiorari Denied January 7, 2003.
Michael E. Yeksavich, Tulsa, OK, for Appellants.
Catherine O'Leary, Assistant General Counsel, Tulsa, OK, for Appellee.
Lisa R. Frazier-Deller, Assistant Public Defender, Tulsa, OK, for the Minor Child.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 1.
*790 Opinion by LARRY JOPLIN, Vice-Chief Judge:
¶ 1 Gordon and Louise Miller (Appellants) seek review of the trial court's order dismissing their petition to adopt their great-niece, E.C.B. (Child), upon the refusal of the Department of Human Services (DHS) to give its consent to adopt. In this appeal, Appellants essentially argue that, under certain circumstances such as those presented in the present case, DHS's consent is unnecessary, and/or its refusal to consent is subject to review. Finding no reversible error as alleged, we affirm the trial court.
¶ 2 Child was born on February 16, 2000. At the age of two months, DHS obtained emergency custody of Child on the allegation of "shocking and heinous" abuse by her father,[1] and failure to protect by her mother and resident paternal grandmother. DHS placed Child in foster care upon her release from the hospital. In January 2001, parental rights were terminated and Child was placed in the permanent custody of DHS.[2]
¶ 3 In about March 2001, Appellants  having never met their grand-niece, and apparently unaware of the proceedings  contacted DHS seeking visitation and consideration for adoption.[3] DHS declined to permit visitation at that time, preferring to maintain Child's current foster placement without change un-less *791 or until Appellants "moved forward" on their application for adoption.
¶ 4 To this end, DHS initiated a request for an adoptive home study of Appellants at their residence in California pursuant to the Interstate Compact on Placement of Children (ICPC), 10 O.S. § 571, in April of 2001. In August 2001, DHS received the completed home study from California which recommended Appellants be approved for adoption of Child. After further review, however, DHS declined to consent to Appellants' application to adopt Child, ostensibly based on concerns (1) that Appellants might permit visitation by her father and paternal grandmother, and (2) for potential harm to Child from severance of the strong bond which had developed between Child and the foster parents who expressed a desire to adopt.
¶ 5 Appellants sought internal review of the decision by DHS without success. Appellants then filed their petition to adopt Child in the district court. Without timely notice to DHS, Appellants obtained a court order waiving a pre-placement home study and granting an interlocutory decree of adoption, and orders directing the release of the home study, juvenile court records, medical history and social history reports.[4]
¶ 6 Upon receipt of notice, DHS filed an objection to Appellant's petition, arguing its consent was required by law for any adoption of a child in its permanent custody, and setting out the reasons DHS had withheld its consent in the present case.[5] Child's court-appointed attorney agreed with DHS's decision. After a hearing, the trial court "dismissed" Appellants' petition, holding Appellants had no standing to bring, "and the Court is without jurisdiction to proceed on, the instant Petition." Appellants appeal.
¶ 7 In two of their three propositions of error, Appellants attack the decision of DHS to withhold consent as impermissible, arguing their application to adopt Child had been approved in the DHS-initiated ICPC home study from California. However, we find nothing in the record to establish that DHS, the permanent custodian of Child, ever authorized or consented to Appellants' adoption of Child by initiation of an ICPC home-study in Appellants' home state of California.
¶ 8 In this respect, the ICPC is designed to promote cooperation among party states "in the interstate placement of children [so] that:"
Each child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care[;]
The appropriate authorities in a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child[;]
The proper authorities of the state from which the placement is made may obtain the most complete information on the basis on which to evaluate a projected placement before it is made[; and,]
Appropriate jurisdictional arrangements for the care of children will be promoted.
10 O.S. § 571, Art. I(a)-(d). To this end, the ICPC establishes orderly procedures to ensure the protection of, and provision of services to, children placed across state lines for foster care or adoption, and in order for a child to be placed in another state, compliance with ICPC is required. 10 O.S. § 571, Article III(a). The ICPC consequently mandates that the "sending agency" retains primary jurisdiction "to determine all matters in *792 relation to the custody, supervision, care, treatment and disposition of the child . . . until the child is adopted," "includ[ing] the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law." 10 O.S. § 571, Art. V(a).
¶ 9 The Oklahoma Constitution authorizes the legislature to provide by appropriate legislation for the care of children. Ok. Const., Art. XXV, § 1. The Oklahoma Legislature consequently charged DHS with the duty to "determine the appropriate placement of ... child[ren]" in its custody. 10 O.S. Supp.1998 § 7003-7.1(C)(1). In the discharge of its duties, DHS must, upon "paramount consideration in all proceedings concerning a child alleged or found to be deprived [of] the health and safety and the best interests of the child," "[e]nsure that, in the best interests of the child, when family rehabilitation and reunification are not possible or are determined not to be necessary pursuant to the Oklahoma Children's Code, the child will be expeditiously placed with an adoptive family or in another permanent living arrangement." 10 O.S. § 7001-1.2(B). Upon termination of parental rights and permanent placement of a child with DHS, DHS is vested "with authority to place the child and, upon notice to the court that an adoption petition has been filed concerning such child,. . . to consent to the adoption of the child, and the jurisdiction of the committing court shall terminate upon final decree of adoption." 10 O.S. § 7003-5.5(I)(3). See also, 10 O.S. § 7503-2.1(D)(1).[6]
¶ 10 However, the parties cite, and we find, no authority, permitting delegation of DHS' primary jurisdiction over the care, custody and placement of its wards. The fact that California authorities, after a home study, recommended approval of Appellants' petition to adopt, is therefore not determinative.
¶ 11 We view the dispositive issue in this appeal as whether the trial court possessed the authority to entertain and proceed on Appellants' petition to adopt in the face of DHS' express refusal to consent.[7] Clearly, there can be little doubt that:
[T]he district court has the disposition and review authority to approve, disapprove, or modify DHS' placement, care, and treatment of an adjudicated . . . child placed in its custody; and, the judicial review authority is continuing until the court places permanent custody of the child with DHS or until the child is no longer a ward of the court.
State ex rel. Dept. of Human Services v. Colclazier, 1997 OK 134, ¶ 9, 950 P.2d 824, 827. It seems to us equally plain that under the Oklahoma statutory scheme, DHS is vested with the authority to consent to the requested adoption of a child in its custody on notice to the court. Colclazier, 1997 OK 134, ¶ 10, 950 P.2d at 828. Implicit in this grant of authority, it seems to us, is the authority to withhold consent. And, the statutes recognize no vehicle by which to challenge DHS's decision to grant or withhold consent to a particular application for adoption, nor any grounds to override DHS' decision to withhold its consent to adopt. Accordingly, we cannot say the trial court erred in dismissing Appellants' petition to adopt.
¶ 12 Appellants nevertheless assert the trial court's order violates their statutory custodial preference under 10 O.S. § 21.1(A),[8] and their due process right to review of the DHS decision to withhold consent to their adoption of Child. However, *793 Appellants are not Child's natural parents and have no constitutionally protected interest in or to Child's custody. See, e.g., Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). Moreover, the order of custodial preference set out in § 21.1(A) is subordinate to a determination of, and a decision in, the child's best interests. In the Application of Smith, 1992 OK CIV APP 97, ¶ 7, 837 P.2d 929, 932.[9] Having reviewed the record, we cannot say the trial court's judgment lies so affected by an abuse of discretion or contrary to the weight of the evidence as to warrant our intervention. Id.
¶ 13 The order of the trial court is therefore AFFIRMED.
JONES, J., dissents, and BUETTNER, J., concurs.
NOTES
[1] Between 23 to 28 bone fractures in various stages of healing.
[2] Child remained in foster care for the ensuing ten to eleven months in which she thrived, and the foster parents expressed a desire to adopt.
[3] The record suggests mother failedwhen askedto inform DHS of any family members capable of taking care of child.
[4] The trial court, upon subsequent review, stated that if it had known "the whole story," it would not have entered these orders.
[5] DHS gave the following reasons in its objection to Appellants' petition for declining the application to adopt:

a. the shocking and heinous abuse history and background information regarding the child's biological family and need to guarantee the child's future safety as much as possible;
b. the risk of future contact between the child and family members who abused her and/or failed to protect her from abuse; and,
c. the child's present adjustment and the significant bonding and attachment she has experienced in her current placement.
[6] "When consent for adoption is necessary for minors in the custody of the Department of Human Services, the Director of the Department of Human Services or the designee of the Director may designate, authorize, and direct in writing an employee of the Department to appear in the court of the county in which said adoption proceedings are to be completed and to give written consent for the adoption of such minor by the family whose application for adoption has been approved by the Department of Human Services;...."
[7] This issue is not directly addressed by Appellants.
[8] "Custody should be awarded or a guardian appointed in the following order of preference according to the best interests of the child to: 1. A parent or to both parents jointly except as otherwise provided in subsection B of this section; 2. A grandparent; 3. A person who was indicated by the wishes of a deceased parent; 4. A relative of either parent; 5. The person in whose home the child has been living in a wholesome and stable environment; or 6. Any other person deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child."
[9] "The controlling language of 10 O.S. § 21.1 is the phrase `... according to the best interests of the child ...' when determining custody, not the order of preference. The trial court has wide latitude in determining the best interests of the child in ... proceedings for adoption. (Citation omitted.) Each case must be decided on its own merits.... Where the custody of a minor child is an issue between two parties and neither one is a natural parent, the issue is not to be decided upon the statutory order of preference alone in the event both contesting parties are deemed to be fit and proper custodial parties."