2005 OK CIV APP 8

STATE of Oklahoma, ex rel. DEPARTMENT OF HUMAN SERVICES, ex rel. Keith Wayne OGLETREE, Plaintiff/Appellee,

v.

Lisa Marie CABE, now Burgess, Defendant/Appellant.

No. 100,333.

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 4, 2005.

ery against the tortfeasor, who was 17–years–old at the time of the accident.

Tracy Cotts Reed, Oklahoma City, OK, For Plaintiff/Appellee.

Damon G. Shadid, Oklahoma City, OK, For Defendant/Appellant.

Opinion by KEITH RAPP, Judge.

¶1 The trial court defendant, Lisa Marie Cabe, now Burgess, (Mother) appeals the trial court order modifying custody of the parties' child, D.D.C., from the Mother to the plaintiff, Keith Wayne Ogletree (Father) with attendant provisions for child support and visitation.

## BACKGROUND

¶2 The parties are not and apparently have not been married to each other. The case originated as a paternity action in Beckham County, Oklahoma, by the State on relation of Father as plaintiff. The trial court entered a judgment in October of 2000, establishing Father's paternity and fixing child support and visitation for Father and determining that custody of the child should be with Mother. Thereafter, Father and Mother at different times and independent of each other moved to Edmond, Oklahoma. During the periods of time involved here the child was four and five years of age.

¶3 On March 17, 2002, Father filed a motion to change venue in which he advised the court of the parties' changes of residences to Oklahoma County and alleged that he was being denied visitation and intended to litigate the issue. Mother did not file a motion but, according to the Briefs, apparently agreed to the change. The court denied the change of venue request.[1]

---

1. The Briefs also indicate that Father sent an agreed order to the trial court sustaining the change of venue. However, the record shows that the trial court returned the document after denying the motion and the document is not in the court file that is part of the appellate record.

¶ 4 Then, on July 10, 2003, Father filed a motion to modify custody in Beckham County District Court on grounds of alleged sexual abuse of D.D.C. and interference with visitation. The record does not contain any written response from Mother to this motion. Prior to the hearing, Father requested that the Oklahoma Department of Human Services (DHS) records pertaining to D.D.C. be made available and the court granted the request.[2] It appears that these records related to a pending deprived child action filed in Oklahoma County where DHS took custody of D.D.C. These records are not part of the appellate record and it does not appear that the trial court actually viewed the DHS records. The trial court did allow Father's counsel to summarize some of the content.[3]

¶ 5 A hearing was held on August 11, 2003, and continued to October 29, 2003. Mother was represented by an attorney on the first day of the hearing. In the interval between the hearings, on October 1, 2003, another attorney entered an appearance as attorney for Mother.[4] On October 9, 2003, her new attorney from Oklahoma County filed a request to withdraw which was granted the following day, October 10, 2003. The request does not reflect any notice to Mother in accord with 12 O.S. Supp.2004, § 2005.2(C), or service upon Mother, or other procedural compliance with that statute. Further, there is no evidence the trial court caused the court clerk to send notice.[5] Mother did not have counsel on the second day of the hearing.

¶ 6 Father, Father's wife, and Mother testified at the first day of the hearing. Father testified to his version of difficulties he had with Mother over his exercise of visitation. On an occasion when D.D.C. was in Father's home, Father related that he came home from work and his wife told him that she found D.D.C. in the bedroom masturbating. Father questioned his son at length and testified that his son told him that his maternal uncle showed him how to do it. According to Father, he and his wife discussed the incident with Mother when D.D.C. was returned and it was agreed that the boy would no longer be around the uncle.

¶ 7 A few weeks later, around Christmas time, Father apparently learned that D.D.C. had been in the presence of the uncle. Then, about two months later, in February, Father reported the allegation of sexual abuse to authorities, including DHS. It appears from the record that DHS then took custody of

---

2. An independent judge reviewed the DHS records, advised the trial court by letter of record it had reviewed the records and determined "the records of the Department of Human Services may be inspected, released, and disclosed to all of the parties in this matter...." However, there is nothing evidencing transmittal of this information to Mother.

3. Transcript, October 29, 2003, pp. 26–29.

4. The Briefs indicate that Mother's original attorney and the new attorney were from the same firm and that the original attorney may have left the firm. Other than the information provided in the Briefs the record is silent on the point.

5. Section 2005.2 provides:
C. WITHDRAWAL OF COUNSEL. A motion to withdraw may be filed at any time. All motions to withdraw shall be accompanied by a proposed order. No counsel may withdraw from a pending case without leave of the court. The counsel filing the motion shall serve a copy of the motion on the client and all attorneys of record. All motions to withdraw shall be signed by the party on whose behalf counsel has previously appeared or contain a certificate by counsel that:

1. The client has knowledge of counsel's intent to withdraw; or
2. Counsel has made a good faith effort to notify the client and the client cannot be located.
In civil actions, the court may grant a motion to withdraw where there is no successor counsel only if the withdrawing attorney clearly states in the body of the motion the name and address of the party. The order allowing withdrawal shall notify the unrepresented party that an entry of appearance must be filed either by the party pro se or by substitute counsel within thirty (30) days from the date of the order permitting the withdrawal and that a failure of the party to prosecute or defend the case may result in dismissal of the case without prejudice or a default judgment against the party. If no entry of appearance is filed within thirty (30) days from the date of the order permitting withdrawal, then the unrepresented party, other than a corporation, is deemed to be representing himself or herself and acting pro se. In all cases, counsel seeking to withdraw shall advise the court if the case is currently set for motion docket, pretrial conference, or trial.

D.D.C. and his sister from Mother, placed them with Mother's adoptive parents, and filed a petition in Oklahoma County to have D.D.C. declared deprived. The basis for that petition is not reflected in the record before this Court.

¶ 8 Father stipulated to DHS's deprived petition. He testified to following a recommendation from DHS for classes and instruction. DHS then placed D.D.C. with Father where he was physically situated at the time of the trial under review here. Father testified that D.D.C. was well adjusted and interacted well with his other children.

¶ 9 Father's wife's testimony concerning the incident with D.D.C. and what transpired in the weeks and months afterwards leading to DHS's involvement paralleled Father's testimony. However, the context and tenor of her testimony did not paint a picture of visitation conflicts as severe as that portrayed by Father.

¶ 10 Mother's testimony placed fault with Father as to issues concerning visitation. She testified that the uncle had always been a part of her family's life and that he was a good person. She denied that he would have abused the child and stated that Father had questioned the child at length and suggested to the child that the uncle was involved. She testified that she disputed DHS's allegations that D.D.C. was a deprived child and that trial was set for late October on the deprived child petition filed by DHS. She admitted living with a boy friend.

¶ 11 The DHS records had not been authorized for release by the close of the first day of the hearing. The trial court continued the matter apparently to review the DHS records. Father's counsel asked, at the close of the first day, for permission to present rebuttal evidence which the trial court granted.

¶ 12 As noted above, in the interim Mother's counsel withdrew. She appeared at the second day of the hearing without counsel. The record is silent regarding whether she was advised of the consequences of not having an attorney, her knowledge of the withdrawal, opportunity for a continuance, or waiver of any opportunity to seek new coun-

sel. In short, it appears the trial court determined the hearing would go forward with the parties then present.

¶ 13 Father was then permitted to present an expert witness, a licensed professional therapist (LPT). The LPT stated that he was referred to the case through DHS and undertook counseling with D.D.C. just as D.D.C. was being transferred by DHS from the foster home to placement with Father. He was informed of the sexual abuse allegations involving the uncle, but formed no conclusions as to the validity of the allegations. The LPT testified at length as to his activities with D.D.C. and his diagnosis. He indicated D.D.C. was improving in Father's care.

¶ 14 In addition, the LPT was asked by Father's counsel about an alleged incident in Father's home. The LPT testified that he received a telephone call from Father's wife informing him that she discovered her three-year old and D.D.C. engaging in an oral sex act. He said he advised her to report the matter to DHS and then subsequently counseled Father and his wife regarding household rules and organization so that they could monitor behavior. The LPT was asked where D.D.C. may have learned the behavior but he did not know, stating that he never asked D.D.C. how or where the behavior was learned. He justified his position by his opinion that accusatory acts for children dealing with sexual abuse issues is inappropriate and imposes unnecessary guilt upon them.

¶ 15 The record does not contain any objection from the *pro se* Mother concerning the LPT's testimony, such as whether it was proper rebuttal or hearsay. No other witness was offered, including Father's wife, to testify concerning the alleged oral sex act obtained in response to Father's counsel's question.

¶ 16 The trial court ruled from the bench at the close of the hearing. The ruling determined that male children masturbate and that no evidence of sexual abuse was proven. No mention was made regarding the claim of interference with visitation nor did the trial court find there was a change of condition. The trial court awarded Father custody be-

cause the child's "behavior" has improved in his Father's custody.[6]

¶ 17 The trial court focused upon the LPT's testimony of the oral sex act. The trial court, using this testimony and its own personal view that a child does not engage in that activity without being exposed to the activity,[7] ordered a change of custody from Mother to Father based upon the child's "improved behavior." Visitation was granted to Mother and she was ordered to pay child support. Mother appeals.

## STANDARD OF REVIEW

¶ 18 The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1.

Custody contests are of equitable cognizance. The court may exercise continuing jurisdiction of disputed claims. On appeal, the trial court's disposition is reviewed by the standards applicable to chancery cases. The court's decision is presumed to include a finding favorable to the successful party upon every fact necessary to support it. While an appellate court may and will examine and weigh the evidence, the findings and decree of the trial court cannot be disturbed unless found to be against the clear weight of the evidence. Whenever possible, an appellate court must render, or cause to be rendered, that judgment which in its opinion the trial court should have rendered. A decree need not rest upon uncontradicted evidence. It is not fatal to the validity of an equity decision if, on the basis of the evidence presented, the chancellor might have been equally correct in reaching a conclusion different from that

which he actually did. If the result is correct, the judgment is not vulnerable to reversal because the wrong reason was given for the decision or because the trial court considered an immaterial issue or made an erroneous finding of fact. [This Court is] not bound either by the reasoning or the findings of the trial court. Whenever the law and the facts warrant, [this Court] may affirm the judgment if it is sustainable on any rational theory and the ultimate conclusion reached below is legally correct. Unless the decision is found to be against the clear weight of the evidence, the appellate court must indulge in the presumption that it is correct.

*Carpenter v. Carpenter*, 1982 OK 38, ¶ 10, 645 P.2d 476, 479–80.

¶ 19 The question of jurisdiction is fundamental and subject to inquiry by the appellate court. The question of jurisdiction is primary and fundamental in every case, and must be inquired into and answered by this Court both as to its own jurisdiction as well as to the jurisdiction of the court from which the appeal is taken, whether raised by a party or not. *Hayhurst v. Hayhurst*, 1966 OK 238, 421 P.2d 257 syl. 1.

## ANALYSIS AND REVIEW

¶ 20 Mother raises before this Court four issues: Failure to change venue, improperly allowing her attorney to withdraw, error in allowing the expert's testimony as rebuttal, and improper admission of hearsay statements made by the child. However, the dispositive issue here is the fact that the trial court lacked authority to hear the case due to the pending deprivation hearing in another county and DHS's earlier assumption of legal custody of the child.[8]

---

6. Transcript, Oct. 29, 2002, p. 32.

7. It is not clear whether the trial court based this conclusion on "what doctors have told me in other cases." Transcript, October 29, 2002, p. 31.

8. This Court observes that Mother did not move for a change of venue in the trial court on any ground, including *forum non conveniens*. Moreover, the expert's testimony that was relied upon by the trial court was clearly not rebuttal testi-

mony as requested by Father's counsel at the conclusion of the first day's hearing. Rebuttal evidence is "that evidence which has become relevant only as an effect of some evidence introduced by the other side." *Aggressive Carriers, Inc. v. Tri–State Motor Transit Co.*, 1997 OK CIV APP 31, ¶ 13, 941 P.2d 1011, 1013–14, citing *Poppy v. Duggan*, 1925 OK 263, 235 P. 165. *Aggressive Carriers* held that the parties have a duty to present all of their evidence before resting. However, Mother made no objection and, in fact, she personally cross-examined the wit-

DHS, having custody and control of the child by not being a named party, was denied the opportunity to protect the child's best interest. Therefore, the trial court's action here was in reality a nullity for lack of an essential party to the action.

¶ 21 It is undisputed that DHS took custody of D.D.C. and that a deprived petition was filed in another county. Moreover, Father admits that he stipulated to the provisions of the deprived petition, whereas the custodial parent, Mother, contests the allegations. A trial was scheduled on DHS's petition when this case was heard by the trial court.[9]

¶ 22 The Oklahoma Children's Code, 10 O.S. Supp.2002, § 7003–7.1(C), provides:

1. If the child is placed in the custody of the Department of Human Services, whether in emergency, temporary or permanent custody, the Department shall determine the appropriate placement of the child. However, under no circumstances may the Department of Human Services return a child to a parent that contributed to the child being deprived due to abuse or neglect, without prior approval of the court. Any change in the placement of a child adjudicated to be deprived shall be in accord with the provisions of subsection B of Section 7003–5.4a of this title.[10]

¶ 23 This means that DHS has, and had here, the first instance authority and duty to determine placement of the child subject to the approval of the district court. *State of Oklahoma v. Colclazier*, 1997 OK 134, ¶ 12, 950 P.2d 824, 828; *see In re E.C.B.*, 2003 OK CIV APP 5, ¶ 11, 62 P.3d 789, 792.[11] Failure to allow DHS to do this in Oklahoma County was here fatal. It is self-evident to this

Court that the exercise of the court's superintending authority must be by the district court where the deprivation action is pending because of the provisions in the Children's Code pertaining to the procedures for plans, review, reports, and the like. *Colclazier*, 1997 OK 134 at ¶ 12, 950 P.2d at 828.

¶ 24 Thus, this Court holds that where DHS has intervened and taken custody and initiated a deprived child proceeding, as here, then DHS has the first instance authority and duty to provide for the child, subject to review and approval by the district court where such proceeding is pending, and such district court has the exclusive authority to review and approve DHS's acts pursuant to that agency's authority and duty under the Children's Code. Therefore, the trial court judgment here entered in Beckham County is reversed and remanded with instructions to dismiss the action without prejudice.

¶ 25 REVERSED AND REMANDED WITH INSTRUCTIONS TO DISMISS THE ACTION WITHOUT PREJUDICE.

REIF, P.J., concurs, and TAYLOR, J. (sitting by designation), concurs in part and dissents in part.

TAYLOR, J. (sitting by designation), concurring in part and dissenting in part.

¶ 1 I concur with the decision of the majority to vacate the trial court's order because DHS (which had custody of D.D.C.) was not a party to the litigation in Beckham County. I dissent from the decision to dismiss the action because under proper transfer orders DHS might be made a party to the action in

---

ness on several points. A timely objection is necessary to appellate review. *Osborne v. Mollman Water Conditioning, Inc.*, 2003 OK CIV APP 20, ¶ 11, 65 P.3d 632, 636. Last, this Court notes that, other than Mother's attorney's written motion to withdraw, the record shows no compliance with the requirements of 12 O.S. Supp. 2004, § 2005.2(C). However, in view of the outcome reached by this Court, error will not be predicated on the absence of compliance, but this should not signal any approval of the failure to comply with the statute.

9. It should be noted here that Mother at the second day's hearing informed the trial court in an unrebutted statement that DHS in Oklahoma

County was waiting to drop the deprived action depending upon the action of the Beckham County trial court. The trial court told Mother she could "go back and tell them in Oklahoma County ... there has been no evidence presented of anything wrong out here in this case in terms of sexual abuse...." Tr. pp. 32, 34.

10. Section 7003–5.4a imposes notice and approval restrictions on DHS before a relocation of a child.

11. *In re D.D.B. and M.L.R.H.*, 2004 OK CIV APP 31, 87 P.3d 1112, disagrees with *E.C.B.* on another issue.

Beckham County and the case litigated there.