**David HALL, Governor of the State of Oklahoma, Appellant,**

v.

**L. C. TIREY, Jr., Appellee.**

**No. 45405.**

Supreme Court of Oklahoma.

Aug. 1, 1972.

Rehearing Denied Oct. 10, 1972.

Larry Derryberry, Atty. Gen. of Oklahoma, by Robert H. Mitchell, Asst. Atty. Gen., G. M. Fuller, Oklahoma City, G. Dan Rambo, Office of the Governor, Oklahoma City, for appellant.

Miskovsky, Sullivan & Miskovsky, by Robert B. Smith, Oklahoma City, for appellee.

McINERNEY, Justice:

By executive order, appellant, the Honorable David Hall, Governor of the State of Oklahoma, removed appellee, L. C. Tirey, Jr., from his position as a member of the State Board for Property and Casualty Rates. Appellant charged that appellee communicated privately with the attorney for a party to a proceeding before the Board in violation of 75 O.S.1971, § 313. Appellant also charged that appellee violated 36 O.S.1971, § 331(B), by becoming an agent for a firm appearing in proceedings before the Board. The charges against appellee were based on a letter from the local counsel for Insurance Services Offices to Lawrence Berman, New York counsel for ISO. On the date of the letter, ISO was participating in a rate hearing before the Board. After mentioning motions submitted to the Board by the Attorney General, the letter stated in part:

"Chris Tirey called me at home last night after the latest piece in the paper reporting those motions and Derryberry's press release. He is mad. I am keeping him cool for the time being but we can get him to blast the Attorney General whenever we want him to."

In the executive order, appellant provided that the removal would not become finally effective if appellee requested a hearing within three days and that the removal would be stayed pending a hearing. However, appellant suspended appellee immediately and provided that the suspension would remain in effect until after the matter had been finally determined.

Responding to the executive order, appellee denied the charges and requested a hearing. Appellee also challenged the power and authority of appellant to remove or suspend him from office. Further, appellee stated that he would continue to perform the duties of his office and would refuse to recognize or obey the executive order.

Appellant appointed a hearing examiner to conduct the hearing requested by appellee. Before the hearing, the examiner stated that he would not decide the case, nor would he recommend findings of fact or conclusions of law; he indicated that his only function was to conduct the presentation of evidence.

At the hearing, appellee again challenged the power and authority of appellant to remove him from office. After this challenge and other motions of appellee had been overruled, appellant introduced a certified copy of the executive order with a copy of the letter attached, appellee's response to the executive order, a copy of appellant's notice to appellee of the time and place for the hearing, and a transcript of proceedings before the Board on the date that the letter was read to the Board by the Attorney General. With the introduction of these documents, appellant rested his case. Then appellee testified in his own behalf. He admitted placing a call to the local counsel for ISO, but denied being mad or making any statement about blasting the Attorney General. Appellee also denied discussing any issues of fact or law related to the proceeding before the Board. On cross examination, appellee testified that he made the call to determine if ISO was planning to furnish information requested in motions filed by and discussed in press releases issued by the Attorney General.

After the hearing had been concluded and a transcript prepared, appellant entered a final order of removal which included findings of fact and conclusions of law. Appellant concluded that appellee vi-

olated 75 O.S.1971, § 313, which provides in part:

"Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in an individual proceeding shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except upon notice and opportunity for all parties to participate."

Appellant also concluded that appellee violated that part of 36 O.S.1971, § 331(B), which provides:

"No member of the Board or any employee of the State Insurance Department shall represent, directly or indirectly, in any capacity or for any consideration, an admitted or nonadmitted insurer or any person, firm or corporation who has or who may have proceedings before the State Insurance Department."

Further concluding that these statutory violations constituted cause for removal, appellant ordered appellee removed from his position as a member of the State Board for Property and Casualty Rates effective on the date of appellee's suspension under executive order.

Following appellant's final order of removal, appellee sought judicial review of his removal by the district court. After reviewing the hearing record, the district court ruled that the record contained no evidence which would constitute sufficient cause to warrant appellee's removal from office. Accordingly, the district court ordered appellee reinstated to his position as a member of the State Board for Property and Casualty Rates.

█ First, we must consider the power and authority of appellant to remove appellee from office. Under the provisions of 74 O.S.1971, § 2, "[t]he Governor shall have power to remove any officers appointed by him, in case of incompetency,

neglect of duty, or malfeasance in office. . . . . " Appellant's predecessor appointed appellee to his office. Thus, unless a special statute limits the Governor's general removal power granted by 74 O.S.1971, § 2, appellant clearly had the power to remove appellee from office for any of the causes provided in 74 O.S.1971, § 2. Wentz v. Thomas, 159 Okl. 124, 131–132, 15 P.2d 65, 71–72 (1932).

Title 36 O.S.1971, § 331(A), provides for the removal of appointive members of the State Board for Property and Casualty Rates. Section 331(A) provides in part:

"There is hereby created the State Board for Property and Casualty Rates composed of the Insurance Commissioner and two members to be appointed by the Governor, by and with the advice and consent of the Senate. . . . . The Governor shall designate one appointed member as Secretary of the Board. . . . . The appointed members of the Board shall hold office for the term of their appointment [six years] and shall be removed only for cause."

Does this special statute limit the Governor's general removal power under 74 O.S.1971, § 2? We think not. Instead, we believe the two sections should be construed together.

Although 36 O.S.1971, § 331(A), provides that appointive Board members can be removed only for cause, the section does not specify what constitutes cause, nor does it designate the removing authority. In our opinion, the Legislature did not deem it necessary to specify what constituted cause in 36 O.S.1971, § 331(A), because the causes for removal from an appointive office had been enumerated in 74 O.S.1971, § 2. Likewise, the Legislature did not designate a removing authority in 36 O.S. 1971, § 331(A), because the Governor had previously been given the power to remove appointive officers by 74 O.S.1971, § 2. Therefore, we hold that appellant had the power and authority to remove appellee from office under the provisions of 36 O.

S.1971, § 331(A), and 74 O.S.1971, § 2, for the causes specified in 74 O.S.1971, § 2.

■ Relying on the statement from State ex rel. Williamson v. Evans, Okl., 319 P.2d 1112, 1117 (1957), that "the statutory manner for removing from office public officers not subject to impeachment is exclusive," appellee argues that appellant did not have the authority to remove him from office without following the procedures for removal of officers found in 22 O.S.1971, § 1181 et seq. In *Evans,* the Court disapproved the actions of a district judge who removed the statutory trustees of a public trust without complying with the provisions of 22 O.S.1951, § 1181 et seq., *now* 22 O.S.1971, § 1181 et seq. However, in *Evans,* there were no other statutory provisions which authorized the removal of the statutory trustees of a public trust. The Legislature provided another method for the removal of members of the State Board for Property and Casualty Rates. Thus, the statutory method for removal of officers provided in 22 O.S.1971, § 1181 et seq. is not exclusive in the present case.

■ Appellee also contends that appellant had no power to remove him from office because he is a quasi-judicial officer and thus not subject to removal by the Governor. To support this contention, appellee relies on State ex rel. King v. Rowe, 149 Okl. 240, 300 P. 727 (1931). In *Rowe,* the Governor removed a special judge of the Criminal Court of Appeals (now Court of Criminal Appeals). The special judge had been appointed by the Governor's predecessor when one of the regular judges certified his disqualification to hear and determine two cases pending before that court. The Supreme Court held that the Governor was without power to remove a judicial officer because of the separation of powers provided in Okl.Const. art. IV, § 1. *Rowe* involved a judicial officer; the present case involves a member of a statutory board. We do not believe the separation of powers provision of the Okl. Const. art. IV, § 1, precludes the Legisla-

ture from authorizing removal of an appointed member of a board by the Governor. Therefore, the quasi-judicial nature of appellee's position did not deprive appellant of the removal power granted by the Legislature in 36 O.S.1971, § 331(A), and 74 O.S.1971, § 2.

Next, we must decide whether appellee is entitled to a judicial determination of the legality of his removal from office. Appellant argues that his decision to remove appellee from office is final and not subject to judicial review. For this argument, appellant relies primarily on Bynum v. Strain, 95 Okl. 45, 218 P. 883 (1923); and Cameron v. Parker, 2 Okl. 277, 38 P. 14 (1894), appeal dismissed, 18 S.Ct. 944, 42 L.Ed. 1208 (1898). Appellee argues that his removal is subject to judicial review under the Administrative Procedures Act, 75 O.S.1971, § 301 et seq.

■ From 1957 to 1965, Title 36 O.S. 1971, § 331(A), *formerly* 36 O.S.1961, § 331(A), provided in part:

"There is hereby created the State Insurance Board, composed of the Insurance Commissioner and two members to be appointed by the Governor, by and with the advice and consent of the Senate. The appointed members shall serve conterminous with and *at the pleasure of the Governor.*" (Emphasis ours.)

Okl.Sess.Laws 1957, tit. 36, art. 3, § 331(A); Okl.Sess.Laws 1965, ch. 60, § 4. When the Legislature changed the term of appointive Board members to six years and prohibited their removal except for cause, the Legislature undoubtedly intended to create an independent Board which would act in the best interest of the people of the state. Primarily, the Board's duties consist of approving or disapproving rates filed by insurance firms. As long as the appointed members of the Board served at the pleasure of the Governor, they were subject to his control and policies. Approval or disapproval of rates is to be based on standards established by the Legislature, not policies formulated by the Governor. To determine whether rate filings comply with

the legislative standards, the Board conducts investigations and holds hearings. Therefore, the Board acts as a quasi-legislative and a quasi-judicial body.

From our review of the history of 36 O.S.1971, § 331(A), we conclude that the Legislature intended to create an independent administrative board free of the influence that a Governor can assert if the board's members serve at his pleasure. Thus, the Legislature intended to preclude removal of appointive members of the State Board for Property and Casualty Rates except for cause. 36 O.S.1971, § 331(A); Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935). "For it is quite evident that one who holds his office only during the pleasure of another, cannot be depended upon to maintain an attitude of independence against the latter's will." Humphrey's Executor v. United States, supra at 629, 55 S.Ct. at 874, 79 L.Ed. at 1620.

■ Although the Legislature obviously intended to preclude removal of appointive Board members except for cause, the Legislature did not specifically provide a forum in which a Board member could challenge the legality of his removal from office. However, considering the nature of the Board and the history of 36 O.S.1971, § 331(A), we do not believe the Legislature intended to preclude a judicial determination of the legality of the removal of a Board member. Consequently, if a Board member desires to challenge the legality of his removal, we conclude that he is entitled to have the courts decide whether his removal complied with the standards established by the Legislature in 36 O.S. 1971, § 331(A), and 74 O.S.1971, § 2.

In Bynum v. Strain, 95 Okl. 45, 218 P. 883 (1923), the Court held that the judiciary had no authority to review the Governor's decision to remove the bank commissioner. The bank commissioner was appointed for a term of four years with the advice and consent of the Senate and was subject to removal by the Governor for cause. The Court decided that the Gover-

nor had been given the power to remove the bank commissioner and that the authority to determine cause without interference from the courts had been granted to the Governor. However, the Court emphasized the *executive* nature of the principal duties of the bank commissioner and reviewed legislative history which showed an intention to subject the entire banking department to greater control by the Governor. The State Board for Property and Casualty Rates is primarily a quasi-legislative and quasi-judicial administrative body. Furthermore, the legislative history shows an intention to lessen the Governor's control over the Board. Therefore, we do not consider the rule in the *Bynum* decision to be applicable to the removal of a member of the State Board for Property and Casualty Rates.

Similarly, in Cameron v. Parker, 2 Okl. 277, 38 P. 14 (1894), appeal dismissed, 18 S.Ct. 944, 42 L.Ed. 1208 (1898), the territorial Court decided that it had no power or authority to review the Governor's removal of the superintendent of public instruction-ex officio auditor. The Governor appointed the superintendent of public instruction-ex officio auditor for a term of two years with the advice and consent of the territorial council. The Governor removed this officer under the provisions of the predecessor of 74 O.S.1971, § 2, which is the general removal statute providing for removal of appointive officers by the Governor for incompetency, neglect of duty or malfeasance in office. The Court held that the Governor is the exclusive and final authority for determining whether sufficient cause exists to warrant removal of an officer under a statutory provision which gives the Governor power to remove the officer for cause without specifying the manner of ascertaining the cause. Again, however, the officer involved performed mostly executive duties; the office was created to assist the Governor in the performance of his executive duties and responsibilities. Until we are presented a case involving the removal of an officer who performs predominantly executive du-

ties, we will not approve or disapprove the *Cameron* rule that the Governor is the exclusive judge of the sufficiency of the cause for removal. But we decline to follow the *Cameron* rule when the removed officer serves as a member of a quasi-legislative and quasi-judicial administrative body. We adopt the rationale of Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), in the present case.

■ Now, we must determine the procedure to be followed to obtain a forum for judicial review of the legality of the removal of a member of the State Board for Property and Casualty Rates since the Legislature did not provide a procedure in 36 O.S.1971, § 331(A), or 74 O.S.1971, § 2. Absent a specific legislative enactment subjecting removal actions of the Governor to the Administrative Procedures Act, 75 O.S.1971, § 301 et seq., we do not believe the Act applies to removals by the Governor.

■ In City of Tulsa v. District Court of Tulsa County, 174 Okl. 470, 51 P.2d 511 (1935), the Court held mandamus to be a proper remedy to determine the legality of removal from office. However, actions of the Governor cannot be controlled by the courts through mandamus or in any other manner. Oklahoma City v. Haskell, 27 Okl. 495, 112 P. 992 (1910); State ex rel. Attorney General v. Huston, 27 Okl. 606, 611–614, 113 P. 190, 192–193 (1910). Therefore, we believe the proper procedure would be to seek a writ of mandamus in the district court against the payroll officers of the state to require them to approve and disburse the compensation provided by law for the position from which the officer claims he has been illegally removed. In the mandamus action, the state payroll officers will defend on the ground that the officer has been removed from office. At the hearing on the petition for writ of mandamus, the burden will be upon the officer to prove that his removal did not comply with the legislative standard. Thus, the legality of the officer's removal can be determined.

Since the proper procedure for determining the legality of removal from office was not followed in this case, the judgment of the trial court must be vacated. However, we will not order appellee's petition for review dismissed because the proper procedure was not settled prior to this decision. Instead, we will allow the trial court to treat the petition for review as a petition for writ of mandamus, but appellee must amend the petition to show that he is entitled to a writ of mandamus and must substitute the payroll officers of the state for the Governor. Therefore, the trial court is directed to grant appellee time to amend his petition for review and to substitute the proper parties as defendants. If appellee amends his petition and substitutes parties, the trial court will then proceed as if appellee had commenced an original mandamus action. If not amended, the trial court should dismiss the action. To allow appellee time to request from the trial court a stay of the final order of removal from office, the effective date of the vacation of the judgment of the trial court will be 15 days from the date this decision becomes final.

Judgment vacated, and case remanded for further proceedings.

DAVISON, V. C. J., and WILLIAMS, JACKSON, HODGES and BARNES, JJ., concur.

BERRY, C. J., and IRWIN and LAVENDER, JJ., concur in part and dissent in part.