2004 OK 16

**CHANDLER (U.S.A.), INC., National American Insurance Company and Lagere & Walkingstick Insurance Agency, Inc., Appellees,**

v.

**Terry J. TYREE, State Insurance Fund Commissioner, Appellant.**

No. 96,436.

Supreme Court of Oklahoma.

March 9, 2004.

Linda R. Driskill and Jake Jones, Driskill & Jones, Oklahoma City, OK, and R. Patrick Gilmore, Chandler, OK, for Plaintiffs/Appellees.

Stephen G. Solomon, George W. Velotta II, and Gladys E. Cherry, Derryberry, Quigley, Solomon & Naifeh, Oklahoma City, OK, for Defendant/Appellant.

EDMONDSON, J.

¶ 1 The substantive issue in this proceeding involves whether the Commissioner of the State Insurance Fund [1] was required to provide workers' compensation insurance to

---

1. The State Insurance Fund is now known as CompSource Oklahoma. *Nicholas v. Morgan,* 2002 OK 88, n. 1, 58 P.3d 775, 777. See 85 O.S.2001 § 131(e): "(e) The official name of the fund which is known as 'The State Insurance Fund' shall be designated in all future references as 'CompSource Oklahoma'. Any references in the Oklahoma Statutes to The State Insurance Fund shall be deemed references to CompSource Oklahoma." The action was commenced in the District Court prior to the change in the name, and we refer to the Fund based upon the name used in this litigation by the parties.

a company who competes with the Fund in providing workers' compensation insurance. Plaintiffs, three insurance entities with common ownership, Chandler (U.S.A.), National American Insurance Company, and Lagere & Walkingstick Insurance Agency, Inc., (collectively, Chandler), are in the business of providing workers' compensation insurance. However, only National American Insurance Company is an insurance carrier.

¶ 2 Chandler sought mandamus in the District Court to compel Terry J. Tyree, Commissioner of the Oklahoma State Insurance Fund (or Fund) to provide Chandler with workers' compensation insurance. The District Court determined that the Fund was required to provide the insurance. We conclude that Chandler did not meet its burden of proof and that it must be afforded an opportunity to engage in discovery to obtain facts to meet its burden, if such facts exist. Before discussing the merits of the controversy before us, we must address appellate jurisdiction and the motion to dismiss filed by the Fund.

## I.  Appellate Jurisdiction

¶ 3 Chandler's petition in the District Court seeks relief in the form of a writ of mandamus *and* a judgment for damages. The mandamus relief is a request that the court order the Fund to issue a policy of workers' compensation insurance. The trial court issued an alternative writ of mandamus. The Fund filed an objection. The parties filed Joint Stipulations of fact. The stipulations did not address the request for damages. A Journal Entry of Judgment was filed March 28, 2001. That order states that the issues have been fully briefed by both parties, issues mandamus, and directs the Fund to issue a policy of workers' compensation insurance to Chandler. The journal entry is silent on the issue of damages.

¶ 4 The Fund filed a motion for a new trial and Chandler responded. The Fund also sought a stay pending appeal. Chandler responded with an argument that a judgment for damages had not yet occurred. On June 8, 2001, the District Court denied the Fund's motion for new trial, but granted the application for a stay pending appeal. The order contained no references to the request for damages. Chandler appealed and the Court of Civil Appeals issued an opinion that reversed the writ issued by the District Court.

¶ 5 Chandler sought certiorari in this Court. While the matter was pending on certiorari the Fund filed a motion to dismiss the appeal as moot. The Fund argues that the only issue on appeal is the District Court order compelling the issuance of workers' compensation insurance. The Fund argues that Chandler has workers' compensation insurance from another source, and that the proceeding is moot because of this other insurance.

¶ 6 Chandler claims that the appeal is not moot because it sought damages resulting from the Fund's failure to issue a policy. Chandler argues that the Fund would be liable for damages on remand if this Court concludes on appeal that it should have issued the policy, and that a dismissal of the appeal would leave the rights of the parties undecided. Chandler also argues that the appeal presents an issue of public interest which will likely reoccur, and that such is an exception to the mootness doctrine. We first address appellate jurisdiction.

■  ¶ 7 Chandler's claim for damages is pending in the District Court. The specific statutory procedure for mandamus is consistent with this general procedure and allows an adjudication of damages as part of that proceeding.  12 O.S.2001 § 1460.[2]  One issue in *Braine v. City of Stroud,* 1963 OK 189, 385 P.2d 428, was whether a recovery of damages pursuant to § 1460 applied to a defendant's wrongful conduct that was also an element of, and gave rise to, the mandamus cause of action. *Braine* said that § 1460 did apply to damages for such wrongful conduct. *Braine* further concluded that a failure to request such damages in a mandamus proceeding

---

2.  12 O.S.2001 § 1460:
    If judgment be given for the plaintiff, he shall recover the damages which he shall have sustained, to be ascertained by the court or jury, or by referees, as in a civil action, and costs;  and a peremptory mandamus shall also be granted to him without delay.

would support a plea of res judicata (claim preclusion) in a subsequent action for damages. *Id.* 385 P.2d at 431–432.

¶ 8 The parties do not discuss whether the pending claim for damages is part of the same transaction as the mandamus claim. *If* the request for damages is defined as part of a single cause of action that also includes the requested mandamus relief,[3] then the order in this case granting the writ of mandamus would be an interlocutory order anterior to the judgment. This is so because the writ does not adjudicate the entire cause of action. See 12 O.S.2001 § 681, (a judgment is a final determination of the rights of the parties with respect to a particular cause of action or claim for relief). The writ would thus not be appealable as a judgment.

■ ¶ 9 The procedural posture of the district court writ is not susceptible of being construed as a timely appeal. For example, even *if* a writ such as this could be appealed prior to an adjudication of all claims pursuant to 12 O.S.2001 § 994, no § 994 certification was made in this case. The absence of the certification shows that the order is not appealable prior to adjudication of the remaining claim for damages. *Liberty Bank and Trust Co. of Oklahoma City v. Rogalin,* 1996 OK 10, 912 P.2d 836, 838.[4]

¶ 10 This Court has observed potential problems that *may* occur when a trial court adjudicates part of a cause of action and makes that adjudication immediately effective, although the trial court's order ·is not

one of those that is appealable by right prior to judgment. *Liberty Bank and Trust Co. v. Rogalin,* 1996 OK 10, 912 P.2d 836, 837; *Federal Deposit Ins. Corp. v. Tidwell,* 1991 OK 119, 820 P.2d 1338, 1341–1342. In *Federal Deposit Ins. Corp. v. Tidwell, supra,* we dismissed an appeal and recast a portion of the petition in error as an application for prohibition. *Id.* 820 P.2d at 1342. We must dismiss the appeal herein because of a lack of appellate jurisdiction. However, prohibition was requested herein to prevent the enforcement of the trial court's writ, and we issue that writ with directions for further proceedings in the trial court.

■ ¶ 11 The Commissioner claims that the proceeding is moot. The mootness doctrine applies to both appellate and original jurisdiction proceedings.[5] We do not view the motion to dismiss for mootness as a bar to our assuming jurisdiction[6] and granting prohibition ancillary to dismissing an appeal.

■ ¶ 12 The concept of mootness is often linked to circumstances that result in a court's inability to grant effective relief, and any opinion in that controversy would possess characteristics of a hypothetical or advisory opinion. *Westinghouse Elec. Corp. v. Grand River Dam Authority,* 1986 OK 20, 720 P.2d 713, 720; *Rogers v. Excise Bd. of Greer County,* 1984 OK 95, 701 P.2d 754, 761. Mootness will not act as a bar when the challenged event is capable of repetition yet evading review. *Federal Land Bank of*

---

3. This Court has explained that a cause of action (or claim for relief) is defined using the transaction, occurrence, or wrongful act. *Retherford v. Halliburton Company,* 1977 OK 178, ¶ 11, 572 P.2d 966, 968–969; *Chandler v. Denton,* 1987 OK 38, ¶ 13, n. 20, 741 P.2d 855, 863–864; *Resolution Trust Corp. v. Greer,* 1995 OK 126, ¶ 11, n. 5, 911 P.2d 257, 260; *Greenberg v. Wolfberg,* 1994 OK 147, n. 42, 890 P.2d 895.

4. We need not discuss whether the writ could be appealable as an interlocutory order appealable by right. This is so because (1) The time to commence an appeal from an interlocutory order appealable by right is not altered by a motion for new trial (12 O.S.2001 Ch. 15, App., Okla.Sup. Ct.R. 1.22(b) & (f), 1.40(e), 1.61.), and (2) The trial court writ is dated March 28, 2001; the petition in error was filed on June 19, 2001, more than thirty days after the trial court's or-

der, and the motion for new trial could not have extended the time to appeal. *See* 12 O.S.2001 § 990A. Further, an adjudication of a motion for new trial addressed to an interlocutory order is not appealable. *LCR, Inc. v. Linwood Properties,* 1996 OK 73, n. 19, 918 P.2d 1388, 1393.

5. *See, e.g., Lawrence v. Cleveland County Home Loan Authority,* 1981 OK 28, 626 P.2d 314, (appeal); *State ex rel. Dept. of Human Services v. Colclazier,* 1997 OK 134, n. 4, 950 P.2d 824, 826, (exception to the mootness doctrine applied in an original jurisdiction proceeding).

6. *Morrow Development Corporation v. American Bank and Trust Co.,* 1991 OK 31, 816 P.2d 537 (assuming jurisdiction not required for issuance of writ ancillary to appeal when appellate jurisdiction exists).

*Wichita v. Story*, 1988 OK 52, 756 P.2d 588, 589.

¶ 13 The Fund argues that the controversy is moot because Chandler purchased workers' compensation insurance from a source other than the Fund. Chandler argues that the controversy is not moot because it has a pending claim for damages. The Legislature has expressed a clear public policy that employees covered by the Workers Compensation Act be secured either through insurance or through a self-insurance arrangement establishing the employer's ability to pay. *Self Insurers' Management Group v. YWCA of Oklahoma City*, 1997 OK 95, 954 P.2d 115, 118. An employer complying with public policy by providing insurance while pressing a judicial complaint against the Fund is an event of public interest that is capable of repetition. We thus hold that Chandler's alternative insurance coverage obtained during this proceeding does not moot the controversy, and the motion to dismiss because of mootness is denied.

¶ 14 In sum, this appeal would be untimely regardless of whether we construe the request for damages as part of the mandamus cause of action or as a separate cause of action. This Court lacks appellate jurisdiction because of the pending claim for damages in the District Court. We accordingly vacate the opinion of the Court of Civil Appeals herein because it is predicated upon the existence of appellate jurisdiction.

## II. The District Court Proceeding

¶ 15 The controversy was tried on the briefs and joint stipulations submitted by the parties. The plaintiffs (Chandler) employ approximately five hundred people in Chandler, Oklahoma. Except for the State Insurance Fund, NAICO is the largest writer of workers' compensation insurance in Oklahoma. Chandler requested an application for insurance and a quote for tendering a check for the required premium. Chandler submitted an application, but the Fund declined to provide Chandler with an amount for Chandler to tender as its premium payment.

¶ 16 The Fund also declined to provide insurance, and Chandler asked why it would not receive the insurance. The Fund responded with a letter stating that: "While there are many considerations that enter into a decision of coverage, the unique issues and conflicts faced by both parties in providing overage for a fellow insurance carrier were prevailing factors in our decision to decline coverage."

¶ 17 Chandler sought a writ of mandamus in the trial court. The trial court issued an alternative writ. In response to the alternative writ, the Fund stated that it did not issue the insurance because it possessed the discretion to decline to enter into insurance contracts with an entity who is a business competitor, and whose interests might be adverse to the Fund. The Fund subsequently stipulated:

> On November 17, 2000, the State Insurance Fund advised Plaintiffs that "... the unique issues and conflicts faced by both parties in providing coverage for a fellow competing insurance carrier were prevailing factors in our decision to decline coverage." ... Defendant has not provided Plaintiffs with any reason other than those contained in the November 17, 2000, letter for Defendant's declining to insure Plaintiffs' employees.

Joint Stipulations, O.R. at 40, citation omitted.

Chandler argued in the trial court that: "There is absolutely no provision under any statute which allows the State Insurance Fund to refuse to provide workers' compensation insurance coverage to any entity due to the fact that the entity is an insurance company that is a competitor of the State Insurance Fund." O.R. at 66.

¶ 18 Chandler argues that the Fund did not possess the discretion to deny insurance to a competing insurance carrier. The Fund argues that Chandler was not entitled to a writ of mandamus because:

1. Chandler failed to prove that a competing insurance carrier, recently relocated to Oklahoma, has met Oklahoma's operational requirements and does not impact the safe carrying of the Fund;

2. Other carriers had declined to provide insurance to Chandler;

3. A contractual relationship with a competitor would impact the Fund's competitive ability, contrary to the Commissioner's fiduciary duty not to enter into contracts contrary to the interests of the Fund;

4. The Commissioner possesses discretion to deny an application for insurance; and

5. Chandler failed to satisfy its burden of proof for mandamus.

Chandler contends that NAICO has been located in Oklahoma since 1987, with redomestication to Oklahoma in 2000; that it complied with all Oklahoma examination requirements, and had previously undergone a routine financial examination by the State of Nebraska for a three-year period ending in 1998; and that the burden of proof should be on the Fund to show that NAICO is not an entity for which insurance should issue. Chandler argues that the Fund:

> ... has never explained how the mere fact that NAICO is a competitor makes it a risk that is unsafe to carry. The Defendant has produced no evidence nor has it attempted to set forth any evidence that insuring Plaintiffs "is beyond the safe carrying of the State Insurance Fund."

Plaintiffs' Surreply to Defendant's Reply, O.R. at 64–65.

Chandler concludes that the Fund is required to issue insurance to NAICO if it satisfies the statutory requirements for obtaining insurance.

¶ 19 The parties discuss the application of 85 O.S.2001 § 134. Part of that statute states:

> A. In conducting the business and affairs of the State Insurance Fund, the Commissioner of the said fund, or other officer to whom such power and authority may be delegated by the Commissioner, as provided by Section 133 of this title, shall have full power and authority: ...
>
> 2. To decline to insure any risk in which the minimum requirements of the law with regard to construction, equipment

and operation are not observed, or which is beyond the safe carrying of State Insurance Fund, *but shall not have power or authority*, except as otherwise provided in this act *to refuse to insure any compensation risk tendered with the premium therefor*;

85 O.S.2001 § 134(A)(2), (emphasis added).

We recently commented on this language in *Fehring v. State Ins. Fund*, 2001 OK 11, 19 P.3d 276.

> Today, SIF's general purpose is simply to insure employers against liability for workers' compensation claims and to assure employees entitled to benefits under our workers compensation laws that they receive such benefits through the insurance. 85 O.S.Supp.1995, § 131. SIF provides such insurance to both private and public employers. Also, SIF's governing statutes plainly indicate, although it is to be fairly competitive with private insurance carriers providing such insurance, SIF is generally a non-profit endeavor [§ 131(c)], and *its ability to decline to insure an employer for purposes of the employer's workers' compensation liability is restricted.* 85 O.S. Supp.1996, § 134(A)(2).

*Id.* 2001 OK 11, at ¶ 11, 19 P.3d at 280,.

We agree with Chandler that the Fund's discretion is limited when deciding whether to issue insurance to Chandler.

¶ 20 The Fund argues that a decision whether to insure a particular risk is an exercise of discretion beyond the scope of judicial review. In *Bird v. Willis*, 1996 OK 116, 927 P.2d 547, we explained that a district court may issue a writ of mandamus against a state board or agency to compel the performance of an act, and to correct an official's abuse of discretion. *Id.* 927 P.2d at 552. The Fund's characterization of its act as discretionary does not insulate that act from judicial review.

¶ 21 Section 134(A)(2) states that when a premium is tendered[7] the Commissioner may:

---

**7.** The Fund challenges the trial court's writ based upon the fact that no premium was tendered by Chandler. The Fund provides quotes on premiums to those seeking insurance, and the

Fund declined to do this for Chandler. Chandler requested a quote for the purpose of paying the premium. The trial court writ is not enforceable at this time due to our opinion herein, and we

1. Decline to insure any risk in which the minimum requirements of the law with regard to construction, equipment and operation are not observed,

2. Decline to insure any risk which is beyond the safe carrying of State Insurance Fund, and

3. Decline to insure as otherwise provided in this act.

The parties also argue whether the Fund possesses discretion to deny coverage pursuant to other statutes. Chandler asserts that "this act" in § 134(A)(2) refers solely to reasons for not issuing insurance that are listed in § 134. On the other hand, the Fund argues that "this act" refers to statutes other than § 134 that also control the discretion of the Fund to issue insurance. For example, the Fund relies upon 85 O.S. Supp.2000 § 131(c).[8]

(c) Said fund shall be fairly competitive with other insurance carriers and it is the intent of the Legislature that said fund shall become neither more nor less than self-supporting.

In the trial court the Fund argued that:

Summarizing from our filed Objection, the Act requires the Fund to be "fairly competitive" with other carriers. 85 O.S. § 131. The Commissioner is a fiduciary, who may not enter contracts adverse to the interests of its policyholders. 85 O.S. § 138.2. It is reasonable and foreseeable that a contractual relationship could impact the Fund's ability to be fairly competitive. It is also reasonable for the Commissioner to be concerned about insuring a competitor with interests adverse to the Fund and its policyholders.

Defendant's Reply, O.R. at 55.

¶ 22 Section 131 of Title 85 was part of the 1933 Act creating the State Insurance Fund, and it too required that the fund be fairly competitive with other insurance carriers. 1933 Okla.Sess.Laws Ch. 28 § 1(c). Section 134 of Title 85 was part of that 1933 Act and it also provided that the Fund "shall not have power or authority, except as otherwise provided in this Act to refuse to insure any compensation risk tendered with the premium therefor." 1933 Okla.Sess.Laws Ch. 28 § 4(2). The Fund does not possess the discretion to make the Fund less than competitive when insuring a risk. We thus agree with the Fund that § 131(c) is a legislative control of the Fund's discretion similar to that expressed in § 134.[9]

¶ 23 The Fund states that issuing the insurance to Chandler will make the Fund less than fairly competitive with other insurance carriers. Chandler states that this is a conclusion, and that the Fund failed to provide facts in support of the conclusion. The Fund responds that Chandler, in seeking mandamus, has the burden of showing that the Fund acted arbitrarily.

¶ 24 A typical case for mandamus has five elements: (1) The party seeking the writ has no plain and adequate remedy in the ordinary course of the law, (2) The party seeking the writ possesses a clear legal right to the relief sought, (3) The respondent (defendant) has a plain legal duty regarding the relief sought, (4) The respondent has refused to perform that duty, and (5) The respondent's duty does not involve the exercise of discretion.[10] However a writ of mandamus

---

need not address whether the Fund's conduct prevents it from challenging the writ on the basis of the unpaid premium.

**8.** The District Court order was filed March 28, 2001. The 2001 amendment to § 131 was not effective until the following July.2001 Okla. Sess. Laws, Ch. 378, §§ 1, 4. No party discusses the effect of the amendment, and we apply the version of § 131 in effect at the time of the District Court's order.

**9.** The Fund also relied upon 85 O.S.2001 § 138.2(B)(2):

"B. A fiduciary with respect to the State Insurance Fund shall not: ...

2. in the fiduciary's individual or any other capacity act in any transaction involving the State Insurance Fund on behalf of a party whose interests are adverse to the interests of the State Insurance Fund or the interests of its participants or beneficiaries; or ...."

**10.** Some of the Court's opinions describe three elements to the writ by combining into one element a respondent's refusal to act, the existence of a plain legal duty, and a statement that the duty does not involve an exercise of discretion. *See, e.g., Oklahoma Gas & Electric Co. v. District Court*, 1989 OK 158, n. 7, 784 P.2d 61, 63, (stating three requisites to the writ).

may be used to correct an official's arbitrary abuse of discretion. *State ex rel. Smith v. Banking Bd.*, 1980 OK 84, 612 P.2d 257, 261.

¶ 25 A party seeking mandamus "has the burden of proving the clear legal right in himself and a corresponding duty resting upon the defendant in order to authorize the issuance of the peremptory writ." *Lee v. Myles*, 1964 OK 56, ¶ 8, 390 P.2d 489, 491, *quoting, Stubbs v. Excise Bd. of Muskogee County*, 1935 OK 778, 49 P.2d 83. We have applied this general rule to mean that a party seeking mandamus has the burden of showing those facts necessary to support issuance of the writ.

¶ 26 In *State ex rel. Thomas v. Brenner*, 1935 OK 373, 42 P.2d 823, former members of a fire department sought reinstatement. They contended that they could be removed from the fire department only for good and sufficient cause as specified by a state statute. *Id.* 42 P.2d at 824. We said that they had a burden of showing they had a clear right to reinstatement; i.e., the petitioners were required to present facts showing that their removal was not based upon a good and sufficient cause.

¶ 27 In *Hall v. Tirey*, 1972 OK 118, 501 P.2d 496, we explained that an official seeking reinstatement to office via mandamus had the burden "to prove that his removal did not comply with the legislative standard." *Id.* at ¶ 20, 501 P.2d at 502. In *Hall* we explained that a member of the State Board for Property and Casualty Rates could be removed from office pursuant to a statute that listed causes for removal. *Id.* at ¶ 10, 501 P.2d at 499–500. That statute allowed for removal "in case of incompetency, neglect of duty, or malfeasance in office . . . ." *Id.* at ¶ 8, 501 P.2d at 499, *quoting*, 74 O.S.1971 § 2. In a mandamus proceeding where the official was seeking reinstatement, the Governor did *not* have a burden of presenting facts showing that the removal was one of the three statutory causes. Rather, the removed official, as the party seeking mandamus, was required to show facts that the removal was not one of

the three statutory grounds. In sum, a petitioner for mandamus is required to show a violation of, or failure to perform, the relevant statute or duty.

¶ 28 In our case today, the Fund possesses the discretion to refuse to be a party to an insurance contract that would result in the Fund being less than fairly competitive. 85 O.S. § 131. The Fund argued in the trial court that issuing insurance to Chandler would make the Fund less than fairly competitive, and that Chandler had the burden to prove otherwise. Chandler argues that once the alternative writ issued, the Fund had the burden of showing cause that the peremptory writ of mandamus should not issue. Chandler argues that the Fund did not do so in the Joint Stipulations, or otherwise, and the peremptory writ properly issued. The Fund argues that Chandler is impermissibly shifting a burden to the Fund.

¶ 29 Issuance of an alternative writ does not change a particular fact needed as an element of petitioner's claim to a fact needed as an element of a defense: "It is well settled that the burden of proof rests upon the party having the affirmative as made up by the pleadings, and such party must prove every essential fact necessary to establish his cause of action or defense." *Board of County Commissioners of Marshall County v. Snellgrove*, 1967 OK 108, 428 P.2d 272, 276. The Fund stated that issuing insurance would result in the Fund being less than fairly competitive. In these circumstances, Chandler is required to state facts showing that the issued insurance would not make the Fund less than competitive.

¶ 30 Chandler argues that after an alternative writ issues a defendant has the burden of making an answer and presenting defenses to a peremptory writ. This is correct. 12 O.S.2001 § 1457.[11] Chandler states that it does not know what facts, if any, would support the Fund's argument, and that the Fund should raise those facts in its answer.

---

11. 12 O.S.2001 § 1457:
   Answer
   On the return day of the alternative writ, or such further day as the court may allow, the party on whom the writ shall have been served may show cause, by answer made in the same manner as an answer to a petition in a civil action.

¶ 31 Issues in a mandamus proceeding are tried as in a civil action. *State ex rel. State Bd. of Public Affairs v. Principal Funding Corp.*, 1974 OK 16, 519 P.2d 503, 507, *citing*, § 1459. The Oklahoma Discovery Code, 12 O.S.2001 §§ 3224–3237, governs "the procedure for discovery in all suits of a civil nature in all courts in this state." 12 O.S.2001 § 3224.[12] Further, use of discovery procedures in mandamus proceedings is not novel. *See, e.g., Polin v. Retail Credit Co.*, 1970 OK 83, 469 P.2d 1004, 1006 (directing the trial court to reinstate plaintiff's action in mandamus and to reconsider plaintiff's motion to compel answers to interrogatories).

¶ 32 Generally, a party is given an opportunity to use discovery procedures when circumstances are known exclusively by the opposing party. *State ex rel. Remington Arms Co., Inc. v. Powers*, 1976 OK 103, 552 P.2d 1150, 1153. For example, an insurer's claim file may be discoverable in a proceeding involving an allegation of the insurer's breach of a duty to its insured. *Darzenkiewicz v. Jackson*, 1994 OK 151, 904 P.2d 66. Such litigation raises the issue whether the insurer had a reasonable basis to withhold payment when the insured requested the carrier to perform its contractual obligation. *Heffron v. District Court of Oklahoma County*, 2003 OK 75, ¶ 17, 77 P.3d 1069, 1077. The question raised by Chandler is similar: Whether or not the Fund had a reasonable non-arbitrary basis to withhold issuing the insurance when Chandler requested the Fund to perform its statutory obligation.[13] Chandler must be given an opportunity to engage in discovery in the trial court as an opportunity to satisfy its burden of proof.

¶ 33 The alternative writ and answer in a mandamus proceeding may be amended as pleadings in a civil action. 12 O.S.2001 § 1459.[14] Discovery is part of ordinary trial preparation procedure, and it promotes the ascertainment of the truth and ultimate disposition of the lawsuit in accordance therewith. *State ex rel. Oklahoma Bar Association v. Lloyd*, 1990 OK 14, n. 10, 787 P.2d 855, 859; *YWCA of Oklahoma City v. Melson*, 1997 OK 81, n. 41, 944 P.2d 304, 311. An opportunity for Chandler to amend its alternative writ and for the Fund to amend its answer as a result of discovery will promote the ascertainment of the truth and ultimate disposition of the lawsuit in accordance therewith.

¶ 34 In summary, we vacate the opinion by the Court of Civil Appeals and dismiss the appeal for lack of appellate jurisdiction. Appellant's motion to dismiss is denied. We issue ancillary relief in the nature of prohibition, and direct that the trial court's writ of mandamus shall not be enforced until Plaintiffs have opportunities to engage in discovery and amend their alternative writ to meet their burden of proof, and Defendant an opportunity to respond to any discovery and alternative pleadings that may be filed.

¶ 35 WATT, C.J., HODGES, HARGRAVE, KAUGER, BOUDREAU and WINCHESTER, JJ., concur.

¶ 36 OPALA, V.C.J. and LAVENDER, J., concur in part and dissent in part.

OPALA, V.C.J., with whom LAVENDER, J., joins, dissenting in part.

I concur *in* today's *dismissal of this appeal* which is prosecuted from a nonap-

12. 12 O.S.2001 § 3224:

Sections 3224 through 3237 of this title shall be known and may be cited as the Oklahoma Discovery Code. The Oklahoma Discovery Code shall govern the procedure for discovery in all suits of a civil nature in all courts in this state.

13. The Fund did not assert that any of the information underlying its decision was privileged and exempt from discovery. Our decision today should not be read as deciding whether the information used by the Fund in this controversy is, or is not, privileged. *See, e.g., Heffron v. District Court of Oklahoma County*, 2003 OK 75, ¶ 21, 77 P.3d 1069, 1079 (distinguishing between docu-

ments prepared in the ordinary course of business and those prepared in anticipation of litigation).

14. 12 O.S.2001 § 1459:

No further pleading allowed—Similarity to civil action

No other pleading or written allegation is allowed than the writ and answer; these are the pleadings in the case, and have the same effect, and are to be construed and may be amended in the same manner, as pleadings in a civil action; and the issues thereby joined must be tried, and the further proceedings thereon had, in the same manner as in a civil action.

pealable mid-litigation ruling as well as *in the court's refusal to declare the controversy in suit dismissible for mootness;* I dissent from the court's pronouncement of its "ancillary" writ's command that conditionally prohibits the trial court's enforcement of the latter's own writ of mandamus whose effectiveness is presently suspended by a pre- or midappeal nisi prius order. In advance of its final disposition of a cause, a district court is utterly free to entertain quests for modification (or vacation) relief as well as to allow amendments to the pleadings on file. *LCR, Inc. v. Linwood Properties,* 1996 OK 73, 918 P.2d 1388, 1392; *Johnson v. Johnson,* 1983 OK 117, 674 P.2d 539, 543. In the **absence of a demonstrated jurisdictional infirmity or of some threatened use of unauthorized judicial force,** the trial court's freedom to exercise *a broad range of plenary control* over all interlocutory rulings **may not (and should not) be restrained** by this court's midstream interference. *Heffron v. District Court Oklahoma County,* 2003 OK 75, 77 P.3d 1069, 1073. The exceptional factors for triggering this court's writ power are absent here. ***There is absolutely no showing of a need for anyone's protection from the threat of judicial usurpation of power.*** Post-termination stages of this original proceeding should hence be charted *solely* by the adversary parties' chosen course.