2017 OK 40

Kaye BEACH, Plaintiff/Appellant,

v.

OKLAHOMA DEPARTMENT OF PUB-
LIC SAFETY, Michael Thompson, in his
official capacity as Commissioner of the
Oklahoma Department of Public Safety,
Ricky G. Adams, in his official capacity
as Assistant Commissioner of the Okla-
homa Department of Public Safety, De-
fendants/Appellees.

Case Number: 114126

Supreme Court of Oklahoma.

Decided: 05/16/2017

Sherry Doyle, Edmond, Oklahoma, for Appellant.

Mithun S. Mansinghani, Deputy Solicitor General, and Kevin L. McClure, Assistant Attorney General, Office of the Oklahoma Attorney General, Litigation Section, Oklahoma City, Oklahoma, for Appellees.

## OPINION

WATT, J.,

¶1 This Court granted certiorari in this case to consider whether Appellant, Kaye Beach, sufficiently established that her "religiously motivated practice has been substantially burdened," because she was required to submit to a high-resolution facial photograph to renew her drivers license, despite her belief that doing so violated her religion. The Court of Civil Appeals held in her favor. We reverse the Court of Civil Appeals and affirm the district court's ruling.

### FACTUAL AND PROCEDURAL HISTORY

¶2 Since 2001, the Oklahoma Department of Public Safety (Department) has been re-

quired to maintain a system, for limited use, for storing drivers license photographs conforming with industry standards for interoperability.[1] Industry standards require a digital high-resolution facial photograph (biometric photo) that is suitable for use with facial recognition software. Department has also been required since 2001, to implement a system to store digital versions of fingerprints for limited usage.[2]

¶ 3 In September 2003, Department started using its current system, collecting both fingerprints and biometric photos, to issue and renew drivers licenses. The current system does not allow Department to process an application for a drivers license without a computerized digital facial image or fingerprint. Department does not share any of the information from fingerprints or photographs outside of the statutorily-authorized purposes.[3] The only outside access to the database is by the company who provides maintenance support for the system, MorphoTrust USA,[4] and IT professionals employed by the State of Oklahoma.

¶ 4 It is undisputed that Appellant has renewed her drivers license at least two to three times under the new system. Appellant states she was first aware of changes to the system in 2004, when she was required to submit a fingerprint for a renewal. Appellant first learned of the use of facial recognition software with the biometric photo in 2007 or 2008 and first formed her belief that it was offensive to her religiously "towards the end of 2009, 2010."

¶ 5 On March 8, 2011, Appellant attempted to apply to renew her drivers license at Fuson Tag Agency in Norman, Oklahoma. The tag agent informed Appellant that they were required by law [5] to take a biometric photo of her and Appellant could not apply for or obtain a renewal without submitting to the biometric photo and a fingerprint scan. Appellant requested an accommodation based on her religious views and was denied.[6]

¶ 6 On September 21, 2011, Appellant filed suit in Cleveland County District Court seeking an accommodation for her religious beliefs under the Oklahoma Religious Freedom Act (ORFA), 51 O.S.2011, 251-258, and Article 2, Section 30 of the Oklahoma Constitu-

1. The Department ... shall implement a procedure whereby images displayed on licenses and identification cards ... are maintained by the Department to create photographs or computerized images which may be used only:

   1. By a law enforcement agency for purposes of criminal investigations missing person investigations, or any law enforcement purpose which is deemed necessary by the Commissioner of Public Safety;
   2. By the driver licensing agency of another state for its official purpose; and
   3. As provided in Section 2-110 of this title. The computer system and related equipment acquired for this purpose must conform to industry standards for interoperability and open architecture. The Department of Public Safety may promulgate rules to implement the provisions of this subsection.
   47 O.S.2011, 6-101(O).

2. A. The Department ... shall implement a procedure for computerized finger imaging by means of an inkless finger image scanning device and shall require every applicant for an original, renewal or replacement driver license or identification card to submit to finger imaging for the purposes of proof of identity and to ensure the security of the driver license or identification card issued to the applicant....
   . . . .

C. No law enforcement agency of the state or federal government other than the Department of Public Safety shall have access to any information collected through the use of computerized finger imaging without first obtaining a court order from a judge of competent jurisdiction. Each application for an order authorizing the access to any information collected through the use of computerized finger imaging shall be made in writing upon oath or affirmation to a judge of competent jurisdiction. Each application shall establish probable cause for belief that a named individual is committing, has committed or is about to commit a particular violation of law.
47 O.S.2011, 6-110.2(A),(C).

3. 47 O.S.2011, 2-110(C)-(F), 6-101(O), 6-110.2.

4. Appellant contends that MorphoTrust USA is a subsidiary of an international company and thus the database is not secure. Appellant did not provide any evidence that MorphoTrust USA shares any information with any international entities.

5. 47 O.S.2011, 6-101(O).

6. Appellant made several attempts to receive an accommodation from Department, however they are not relevant to our analysis.

tion.[7] On June 19, 2013, Appellant filed a motion for partial summary judgment on her ORFA claim. On April 1, 2014, Appellees filed a response to Appellant's motion for partial summary judgment and a counter-motion for summary judgment.

¶ 7 Appellant contends that her sincerely held religious beliefs forbid her from participating in a global-numbering identification system, using the number of man, and eternally condemn her for participating in any such system.[8] Appellant believes that the biometric photo and fingerprint that Department requires for renewal of a license is the enrollment process for the identification system that is forbidden in the Bible.[9] Appellant contends that Department's system takes measurements off facial points, from the biometric photo, to determine a number that is specific to her,[10] for use with facial recognition technology; Appellant believes the resulting number is the "number of a man" referred to in *Revelation* 13:16-18 thus Appellant objects to the measurements of her body being used to identify her. Appellant states that the government intends to use the biometric photo to tie our bodies to our ability to buy and sell in order to permit or deny access to goods, services, places, and things needed to live everyday.

¶ 8 Appellant contends she is forbidden by her sincerely held religious beliefs from allowing a biometric photo, compliant with international standards for formatting, to be taken and placed into a database even potentially accessible by international entities or shared with other entities and jurisdictions. Appellant states that the crux of the issue is the global information sharing; noting that the industry standards used by Department are compliant with international standards and the database is maintained by a subsidiary of an international company, on behalf of Department.

¶ 9 Appellant detailed the substantial burden on her religious exercise by noting issues she has faced without having a valid drivers license. Appellant has been ticketed for driving without a license. Appellant is sometimes unable to complete debit card transactions, has been unable to book a hotel room, rent a private company's postal box, pick up her own prescriptions, and a variety of other inconveniences because of being unable to show a valid drivers license when asked for identification. Finally, Appellant notes that she is unlikely to find a job in the future due

---

7. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized.
Okla. Const. art. II, 30.

8. Appellant states this command comes from *Revelation* 13:16-18 and *Revelation* 14: 9-11. The passages she cites to state:
And he causeth all, both small and great, rich and poor, free and bond, to receive a mark in their right hand, or in their foreheads; [17] And that no man might buy or sell, save he that had the mark, or the name of the beast, *or the number of his name.* [18] Here is wisdom. Let him that hath understanding count the number of the beast: for *it is the number of a man*; and his number is Six hundred threescore and six.
*Revelation* 13:16-18 (King James)(Emphasis added).
And the third angel followed them, saying with a loud voice, If any man worship the beast and his image, and receive his mark in his forehead, or in his hand, [10] The same shall drink of the wine of the wrath of God, which is poured out without mixture into the cup of his indignation; and he shall be tormented with fire and brimstone in the presence of the holy angels, and in the presence of the Lamb:[11] And the smoke of their torment ascendeth up for ever and ever: and they have no rest day nor night, who worship the beast and his image, and whosoever receiveth the mark of his name.
*Revelation* 14: 9-11 (King James).

9. When asked if she would agree that Department is requiring her to put a mark, number or seal on her hand or her forehead, Appellant replied affirmatively and explained that she believes that the system will *eventually* be coupled with a device, such as RFID, to put the biometric number on or in the body due to a compromised database. Appellant did not define what RFID is for the court, but explained her concerns regarding it as follows: "[R]FID can actually be used topically in the form of a tattoo ... [i]t can also be inserted in the body. And there's more technologies coming out all the time that they can do all sorts of things with."

10. Appellant notes that this is also a literal translation of the term *biometrics*, as *bio* means body and *metrics* means measurement.

to requirements on employers to verify identification.

¶10 On June 17, 2015, the district court denied Appellant's motion for partial summary judgment and granted Appellees' motion for summary judgment. On July 20, 2015, Appellant appealed from summary judgment and the case was assigned to the Oklahoma Court of Civil Appeals, Division IV. On April 29, 2016, the Court of Civil Appeals reversed summary judgment finding that Appellant had met her initial burden and the burden was now on Appellees.[11] On May 19, 2016, Appellees petitioned for certiorari, asking this Court to resolve what constitutes *substantial burden* under ORFA.[12] This Court granted certiorari.

## STANDARD OF REVIEW

¶11 We review a summary judgment under a *de novo* standard as it presents a question of law. *Pickens v. Tulsa Metro. Ministry*, 1997 OK 152, ¶7, 951 P.2d 1079, 1082. Summary judgment shall be affirmed if there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. 12 O.S.2011, 2056(C), *Horton v. Hamilton*, 2015 OK 6, ¶8, 345 P.3d 357, 360. The party moving for summary judgment must propose undisputed material facts and demonstrate, with reference to proper authority, why summary judgment

should be granted. *Howell v. Texaco*, 2004 OK 92, ¶15, 112 P.3d 1154. All inferences and conclusions drawn from the evidentiary materials must be viewed in the light most favorable to the party opposing the motion. *Pickens*, 1997 OK 152, ¶7, 951 P.2d at 1082.

## OKLAHOMA RELIGIOUS FREEDOM ACT

¶12 In 2000, the Oklahoma Legislature enacted the Oklahoma Religious Freedom Act (ORFA).[13] ORFA mandates that no governmental entity shall substantially burden a person's free exercise of religion, even if the burden results from a rule of general applicability. 51 O.S.2011, 253. ORFA defines *exercise of religion* as "the exercise of religion under Article 1, Section 2, of the Constitution of the State of Oklahoma,[ [14] ORFA], and the First Amendment to the Constitution of the United States." [15] 51 O.S.2011, 252(2).

## BURDEN OF PROOF

¶13 This Court has not previously interpreted who bears the burden of proof under ORFA[16] and ORFA itself is silent as to the assignment of the burden of proof of the party seeking relief under the Act. However, Title 51, Section 252 provides guidance on the burden of proof by defining *demonstrates*[17] and *substantially burden*.[18] Both of these terms are used in Section 253:

11. The Court of Civil Appeals also reversed summary judgment based on issues relating to the Oklahoma Governmental Tort Claims Act, 51 O.S.2011, 155(12), 156, and appeals from drivers license denials, 47 O.S.2011, 6-211(A). The Court of Civil Appeals based its reversal on these three enumerated reasons, not on the constitutional violation claim. Neither party briefed the constitutional claim on certiorari, therefore summary judgment is final as to it. *Hough v. Leonard*, 1993 OK 112, ¶1, 867 P.2d 438, 440 (Issues not raised for appellate review are not a proper basis for reversing the judgment.).

12. Appellees also petitioned for certiorari on the other two issues the Court of Civil Appeals ruled on, but as explained later in this opinion, this Court need not address them at this time.

13. 2000 Okla. Sess. Laws 1181-83.

14. "Perfect toleration of religious sentiment shall be secured, and no inhabitant of the State shall ever be molested in person or property on account of his or her mode of religious worship;

and no religious test shall be required for the exercise of civil or political rights." Okla. Const. art. I, 2.

15. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I.

16. While not binding on this Court, in 2003, the Oklahoma Court of Civil Appeals addressed the issue of who bears the initial burden under ORFA. *Steele v. Guilfoyle*, 2003 OK CIV APP 70, ¶7, 76 P.3d 99, 102. The court set forth the rule for the burden of proof from the Religious Land Use and Institutionalized Persons Act (RLUIPA) and noting that ORFA is silent on the burden of proof issue, held the plaintiff in an action under ORFA "must similarly make an initial prima facie showing of 'substantial burden' before any burden of persuasion shifts to the state." *Id.*

17. " 'Demonstrates means the burdens of going forward with the evidence and of persuasion under the standard of clear and convincing evidence are met....' " 51 O.S.2011, 252(1).

A. Except as provided in subsection B of this section, no governmental entity shall *substantially burden* a person's free exercise of religion even if the burden results from a rule of general applicability.

B. No governmental entity shall *substantially burden* a person's free exercise of religion unless it *demonstrates* that application of the burden to the person is:

　　1. Essential to further a compelling governmental interest; and

　　2. The least restrictive means of furthering that compelling governmental interest.

51 O.S.2011, 253 (Emphasis added). The italicized terms in Section 253 refer to actions by a governmental entity, rather than to the plaintiff who brings the action.

¶ 14 Section 253 presupposes that a plaintiff has alleged a substantial burden has been imposed upon him or her which ORFA was designed to prevent. Therefore, before it may be determined whether a governmental entity is liable for substantially burdening one's religious practice or has demonstrated that said burden is essential to furthering a compelling governmental interest, it is essential that the plaintiff show how his or her religious practice has been substantially burdened. Thus, the burden of proof begins with the plaintiff to make a *prima facie* showing of evidence of such substantial burden upon his or her religious freedom [19] *before* the governmental entity must demonstrate the burden is essential to further a compelling government interest and is the least restrictive means to do so. This is consistent with legal principles regarding the burdens of the parties in similar cases before the United States Supreme Court.[20]

¶ 15 Appellant presented no evidence demonstrating the existence of a genuine issue of material fact as to whether Department has ever inhibited or curtailed her religiously motivated practice as forbidden by ORFA, 51 O.S.2011, 253. Appellant failed to produce any evidence from which one could reasonably conclude, or infer, that Department has substantially burdened the free exercise of her articulated religious beliefs. Further, there is no evidence to support Appellant's *fear* that Department is distributing her biometric data on an international scale, intentionally or accidentally, in violation of her religious beliefs. Because Appellant did not meet her burden to make a *prima facie* showing of evidence of substantial burden upon her religious freedom, the burden did not shift to Department to demonstrate the application is essential to further a compel-

---

**18.** " 'Substantially burden' means to inhibit or curtail religiously motivated practice." 51 O.S. 2011, 252(7).

**19.** In order for a Plaintiff to succeed on a motion for summary judgment on this issue, they must make this showing with evidence of undisputed material facts that judgment should be granted as a matter of law. However, if Defendants move for summary judgment, Plaintiff need only show evidence of *disputed* material facts that, if proven at trial, would allow her to succeed on her claim

**20.** In 1993 and 2000 respectively, Congress enacted the Religious Freedom Restoration Act (RFRA) and RLUIPA, which contain almost identical language as ORFA. RFRA states:

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except.... Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. 2000bb-1(a),(b). RLUIPA states:
No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. 2000cc-1(a). In *Holt*, the United States Supreme Court addressed a RLUIPA claim and stated that the petitioner bears the initial burden of proving the governments policy implicates his religious exercise and that the policy substantially burdens that exercise of religion. *Holt v. Hobbs*, —— U.S. ——, 135 S.Ct. 853, 857, 862, 190 L.Ed.2d 747 (2015)(citing *Burwell v. Hobby Lobby Stores, Inc.*, —— U.S. ——, 134 S.Ct. 2751, 2774 n. 28, 189 L.Ed.2d 675 (2014)). The Court said because the petitioner met his burden of showing the government policy substantially burdened his exercise of religion, the burden shifted to the government to show that the policy was in furtherance of a compelling government interest and was the least restrictive means of doing so. *Holt*, 135 S.Ct. at 863.

ling government interest and is the least restrictive means of doing so.

¶ 16 In addition, mootness exists when circumstances occur such that the court is unable to grant effective relief and any opinion in the controversy would possess characteristics of an advisory or hypothetical opinion. *Chandler (U.S.A.), Inc. v. Tyree.*, 2004 OK 16, ¶ 12, 87 P.3d 598, 601. The mootness doctrine applies to both original jurisdiction and appellate proceedings. *Id.* 11, 87 P.3d at 601. This Court is the final arbiter of whether the mootness doctrine applies. *In re Guardianship of Doornbos*, 2006 OK 94, 151 P.3d 126, 126.

¶ 17 This Court will not decide moot issues or hypothetical questions, when no practical relief will result. *Baby F. v. Okla. Cty. Dist. Court*, 2015 OK 24, ¶ 11, 348 P.3d 1080, 1084, *Doornbos*, 2006 OK 94, 151 P.3d at 126. Oklahoma recognizes an exception to the mootness doctrine when an appeal presents a question of substantial or broad public interest. *Doornbos*, 2006 OK 94, ¶ 4, 151 P.3d at 126. However, application of exceptions to the mootness doctrine depend on the facts presented and policy considerations. *Id.* This Court will only apply those exceptions when the practical considerations indicate that doing so would avoid confusion, not prolong it. *Id.* 4, 151 P.3d at 126-27.

¶ 18 It is undisputed that Appellant has submitted biometric photos and fingerprints to Department at least two to three times under Department's current system such that Appellant is already in Department's system. Even if Appellant adduced evidence to show that Department's biometric photo requirements are a substantial burden on Appellant's religious exercise of abstaining from participation in a global-numbering identification system, a court could still not grant Appellant effective relief because Appellant is already "enrolled" in the system with her biometric photo and fingerprints in Department's database. Because Department already has Appellant's biometric photo and fingerprints in its system, the matter presented is moot. There are no facts present here to allow application of an exception to this jurisdictional bar. As such, we need not address the other related issues brought before this Court.

¶ 19 The opinion of the Court of Civil Appeals is vacated, and the district court's grant of summary judgment is affirmed. This case is remanded to the district court for further proceedings consistent with the views expressed in this opinion.

**OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; JUDGMENT OF THE DISTRICT COURT IS AFFIRMED; REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS.**

COMBS, C.J., WATT, WINCHESTER, EDMONDSON, COLBERT, JJ, THORNBRUGH, SJ.—CONCUR

GURICH, V.C.J, and REIF, J.—CONCUR IN RESULT

KAUGER, J.—CONCUR IN PART; DISSENT IN PART

WYRICK, J.—RECUSED

Kauger, J., concurring in part; dissenting in part "In my opinion, this cause is moot."